# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: |
| | : | 1:10-cv-03374-WSD |
| **PAUL T. MANNION, JR., et al.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE THE EXPERT OPINIONS OF MARC J. BROWN

M. Graham Loomis
Ga. Bar No. 457868
Securities and Exchange Commission
950 East Paces Ferry Road, Suite 900
Atlanta, GA 30326
Email:  LoomisM@sec.gov
Phone:  (404) 842-7627
Fax:  (404) 842-7633

David Williams (*pro hac vice*)
John J. Bowers (*pro hac vice*)
Adam S. Aderton (*pro hac vice*)
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C.  20549
Email:    WilliamsDav@sec.gov
Phone: (202) 551-4548 (Williams)
Fax:   (202) 772-9246 (Williams)

*Attorneys for Plaintiff Securities and Exchange Commission*

Dated:  October 12, 2012

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

Table of Contents ............................................................. i

Table of Authorities ........................................................ ii

I. Brown's Opinion is Irrelevant ...................................... 3

   A. Brown Failed To Analyze The Fair Value Of Fund Assets .................... 3

   B. Brown Performed An Irrelevant Analysis .............................. 5

II. Brown's Opinion in Unreliable .................................... 7

   A. Brown Incorrectly Calculated Enterprise Value ...................... 8

   B. Brown's Guideline Company Methodology Is Not Reliable .................. 10

Conclusion ................................................................. 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Allied Capital Corp. Sec. Lit.*, 2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003) ............................................................................... 4

*Allison v. McGhan Md. Corp.*, 184 F.3d 1300 (11th Cir. 1999) .................... 3

*Analytical Surveys, Inc. v. Tonga Partners, LP*, 2008 WL 4443828 (S.D.N.Y. Sept. 29, 2008) ........................................................................ 2

*City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, ---, F. Supp. 2d -- 2012 WL 2866425 (S.D.N.Y. July 13, 2012) ................................................................................................. 2

*Hicks v. Stanley*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................... 4

*In re Fannie Mae 2008 Sec. Litigation, Inc.*, --, F. Supp. 2d -- 2012 WL 3758537 (S.D.N.Y. Aug. 30, 2012) ................................................. 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........... 3

*In re Golden Mane Acquisitions, Inc.*, 221 B.R. 963 (N.D. Ala 1997) .......... 8

*Janus Capital Group v. First Deriv. Traders*, 131 S. Ct. 2296 (2011) .......... 2

*In re Kamayan Holdings, LLC*,  2012 WL 1885177 (W.D. Tex. May 23, 2012) ............................................................................................. 10

*Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003) .............................. 14

*Mandelbaum v. CIR*, T.C. Memo. 1995-255, 1995 WL 350881,  (U.S. Tax. Ct. June 12, 1995) ...................................................................... 11

*In re Medical Diversified, Inc.*, 334 B.R. 89 (E.D.N.Y. 2005) .................... 14

*Principi v. Survivair, Inc.*, 2005 WL 5961991 (M.D. Fla. Oct. 18, 2005) ..................................................................................................... 3

*SEC v. Landberg*, 836 F. Supp. 2d 148 (S.D.N.Y. 2011) ..............................2

*SEC v. Mannion*, 789 F. Supp. 2d 1321 (N.D. Ga 2011) ...............................2

*SEC v. Pentagon Capital Management*, 844 F. Supp. 2d 377
(S.D.N.Y. 2012)........................................................................................2

*In re Tousa, Inc.*, 422 B.R. 783 (S.D.Fla 1999) ..................................9, 10, 13

*In re Transit Group, Inc.*, 332 B.R. 45 (M.D. Fla. 2005)...............................8

*Unaka Co., Inc. v. Newman*, 2005 WL 1118065 (E.D. Tenn. April 26,
2005) ........................................................................................................7

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004)..............................3


## STATE CASES

*Prescott Group Small Cap, L.P. v. The Coleman Co., Inc.*, 2004 WL
2059515 (Del. Ch. Sept. 8, 2004)............................................................13

*In re Radiology Associates, Inc. Litigation*, 611 A.2d 485 (Del. Ch.
1991) .......................................................................................................14

*Taylor v. America Specialty Retailing Grp., Inc.*, 2003 WL 21753752
(Del. Ch. Ct. July 25, 2003)...............................................................11, 14


## FEDERAL STATUTES AND RULES

11 U.S.C. § 101(32)........................................................................................6

Fed. R. Evidence, Rule 702 ............................................................................3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No.: |
| : | 1:10-cv-03374-WSD |
| **PAUL T. MANNION, JR.**, et al., : | |
| : | |
| Defendants. : | |
| : | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO
EXCLUDE THE EXPERT OPINIONS OF MARC J. BROWN**

Plaintiff Securities and Exchange Commission (the "Commission") has

demonstrated through undisputed evidence that defendants Paul Mannion and

Andrew Reckles, acting through entity defendants PEF Ltd. and PEF LLC,

repeatedly violated their fundamental duty to act at all times in the best interest of

the Palisades Master Fund, LP (the "Fund") and its investors, and committed fraud

by putting their undisclosed personal interests ahead of the Fund and investors,

misappropriating valuable Fund assets, and misleading investors as to the value of

the Fund.[1]   The Commission seeks to preclude consideration of the purported

expert opinions of Marc J. Brown ("Brown") on summary judgment, and for all

---

[1]     Defendants contend that the Commission "abandoned" its claims that Defendants "made" material misrepresentations both in a securities purchase agreement in a private offering, as well as in the Fund's monthly NAV statements to investors, citing to the Supreme Court's decision in *Janus Capital Group v. First Deriv. Traders*, 131 S.Ct. 2296, 2302 (2011).  But *Janus* dealt with a Fund and its investment advisor that were *separate* corporate entities.  Here, the undisputed evidence is that defendants were not a separate corporate entity from the Fund, they were the *general partners of the Fund, which was constituted as a limited partnership* – as such they were the agents of and *controlled* the partnership itself. [E.g., Palisades Equity Fund, LP COM, Docket No. 59, Ex. 5, pp.9, 17-18; SEC's SOF 5; Def's SOF 18, 71, 102] (vesting Defendants with sole authority to make investment decisions, as well as for determining the fair market value of Fund assets).  Defendants were the "makers" of the pertinent misrepresentations of the Fund.  *See Analytical Surveys, Inc. v. Tonga Partners, LP*, No. 06-cv-2692, 2008 WL 4443828, at *11(S.D.N.Y. Sept. 29, 2008) (exercise of "investment power by a general partner acting on behalf of a limited partnership is the exercise of that power by the limited partnership itself").  Much as a corporate insider can "make" statements he did not sign, because *Janus* "has no bearing on how corporate officers who work together in the same entity can be held jointly responsible on a theory of primary liability," *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp*., —— F.Supp.2d ——, 2012 WL 2866425, at *14–15 (S.D.N.Y. July 13, 2012), *accord, In re Fannie Mae 2008 Sec. Litig*., — F.Supp.2d ——, 2012 WL 3758537, at *6 (S.D.N.Y. Aug. 30, 2012) (corporate insider responsible for unsigned statements under his control), those in control of a partnership are equally culpable for the acts of the partnership undertaken at their direction.  *SEC v. Mannion*, 789 F.Supp.2d 1321, 1342 (N.D. Ga 2011); *SEC v. Landberg*, 836 F.Supp.2d 148, 154 (S.D.N.Y. 2011) (CFO of investment adviser liable for fund statements "implicitly attributed" to him); *see* BVI Partnership Act of 1996, §61 (expressly providing for liability of general partners for false statement in LP memorandum).  Moreover, as the inflated NAV values and profits from the private offering misrepresentations permitted Defendants to obtain improper advisor fees, the conduct also constitutes a fraudulent scheme.  *SEC v. Pentagon Capital Management*, 844 F.Supp.2d 377, 422 (S.D.N.Y. 2012).

other purposes, because Brown's opinions do not meet the threshold requirements of reliability required for admission into evidence of Rule 702 of the Federal Rules of Evidence ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The parties agree that the only remaining issue pertinent to Brown's opinion is whether Defendants acted in good faith – that is, "whether Defendants reasonably exercised their discretion in valuing the side pocket." Defendants' Memorandum in Opposition to Motion In Limine ("Mem.") at 2.

## I.     Brown's Opinion is Irrelevant

"The burden of establishing qualification, reliability and helpfulness rests on the proponent of the expert opinion." *Principi v. Survivair, Inc*., 2005 WL 5961991, at \*4 (M.D. Fla. Oct. 18, 2005) (*citing United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004*)); see Allison v. McGhan Md. Corp*., 184 F.3d 1300, 1306 (11th Cir. 1999) ("burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert"). Defendants have not carried their burden of establishing that Brown's opinion is relevant and reliable.

### A. *Brown Failed To Analyze the Fair Value of Fund Assets*

Defendants do not meaningfully address the most significant shortcoming of the Brown opinion – the sole opinion in the first and only "expert" report that Brown has ever written. Brown's opinion is irrelevant to the purported

reasonableness of Defendants' conduct because it does not speak to the "fair value" analysis they were required to perform in assessing the value of the assets.[2] The Fund's offering documents do not permit Defendants to pick values for assets without regard to any standard – departures from standard valuation methodology are permitted *only* where Defendants determined that "the value of any security or other investment is not representative of *fair value*."  [E.g., Palisades Equity Fund, LP COM, Docket No. 59, Ex. 5, p. 19].

While it is true that "[t]here is no one authoritative method of determining fair value" and the determination involves the exercise of judgment, "[a]s a general principle, the fair value of restricted securities is the amount which the owner might reasonably expect to receive for them upon their current sale."  *In re Allied Capital Corp. Sec. Lit*., No. 02-cv-3812, 2003 WL 1964184, at *1 (S.D.N.Y. Apr. 25, 2003).  The same principle applies to debt obligations – "[w]here the 'fair value' method is used, SEC rules require that the 'fair value' of a loan must reflect what would be received on its current sale."  *Hicks v. Stanley*, No. 01-cv-10071, 2005 WL 2757792, at *1 (S.D.N.Y. Oct. 24, 2005).  While Defendants assert that the present motion boils down to a "battle of the experts," *only* the Commission's

---

[2]    While Defendants claim that Brown "considered" fair value, they fail to explain how, if at all, such "consideration" is actually reflected in Brown's proffered opinion.  *See* Mem. at 12, n.11.

expert Bernard Pump speaks to the guideposts pertinent to a "fair value" analysis. For example, Mr. Pump sets forth an "overview of Generally Accepted Valuation Practices and [the] definition of 'fair value'" in his report. [Docket No. 59, Ex. 9 at p. 12].[3]  Among the considerations in the analysis are the "financial standing of the issuer, . . . [s]ize of position held and the liquidity of the market, . . . [c]ontractual restrictions on disposition,  . . .[r]eported prices and the extent of public trading in similar financial instruments," and other factors which might support a determination of a value at which a security "could be exchanged in a current transaction between willing parties." *Id*. at p. 14-15.   Plainly, the fact that Defendants took into account *none* of these factors is probative of whether they undertook a "fair value" valuation of the assets in good faith. *Id*. at 20-46.

But Brown's opinion does not speak to this analysis at all.  His report does not *mention* fair value, much less analyze the factors pertinent to the analysis. Brown conceded that he did not perform a fair value analysis of pertinent assets, Brown Dep. 145:1-146:12, and declined to provide an opinion as to whether

---

[3]     Defendants criticize Mr. Pump for employing U.S. Generally Accepted Accounting Principles ("GAAP") "when the Fund's financial statements were prepared in accordance with International Financial Reporting Standards."  Mem. at 15.  But Mr. Pump *also* provided the standard for fair value under International Financial Reporting Standards. *See* Pump Report, [Docket No. 59, Ex. 9, pp. 15-16].  This standard, substantially similar to that under U.S. GAAP, provides that "fair value is the amount for which an asset could be exchanged, or a liability settled, between knowledgeable willing parties in an arms' length transaction."  *Id*.

whatever analysis Defendants undertook resembled a fair value analysis.  Brown Dep. p. 225:18-226:6 (Brown did not "know what guidelines they were using" to make their determinations).

### B.  Brown Performed an Irrelevant Analysis

In fact, Brown's opinion is not a *valuation* opinion at all – it is a solvency analysis.  Brown determines that World Health's assets exceed its liabilities – that there is "coverage" for all liabilities.  This is a *solvency* analysis.  *See* 11 U.S.C. § 101(32) (defining "insolvency" as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation. . . .").  His solvency analysis is unreliable in that he makes no attempt to reconcile his conclusion that World Health was solvent with the reality that the company was well on its way to bankruptcy.  But the question of whether World Health was solvent does not speak to the value of the company's debt securities – other than through Brown's *ipse dixit* that because the company was solvent, the debt was reasonably valued at its full face value.

And significantly, there is no showing that the Defendants actually undertook the analysis set forth by Brown.  Defendants now claim that "the Fund Managers indeed employed the very approach Mr. Brown used."  Mem. at 17.  But the evidence cited suggests no such thing. *See* Mannion SEC Tr. at 127:4-25;

Reckles SEC Tr. at 117:2-118:11.  [Docket No. 85, Exs. 8, 9].  The evidence does not refer to any comparison of World Health to comparable companies; it refers only to the ongoing bidding process for the World Health assets.

To the extent Defendants suggest that this evidence supports their claimed subjective belief in the reasonableness of their valuations because of the existence of so-called "coverage," it is significant that the *only* record evidence of Defendants' subjective awareness of an actual, tangible indication of value for the World Health assets was in the September 8, 2005 letter to Fund investors from Defendants, which represented that "the one public competitor that contacted us last week stated that they would pay $60 million in a pre-packaged bankruptcy." [Docket No. 66, Def's SJ Ex. 21].  By Brown's own assessment of "coverage" (or solvency), if World Health's enterprise value was only $60 million,[4] the amount of so-called coverage would have been *inadequate* to meet the company's debt obligations.  *See* Brown Report, Ex. 5-4.  Thus, Brown's so-called analysis, when employed with the only inputs actually available to Defendants, contradicts Brown's sole thesis.[5]  His opinion is simply irrelevant to the issues at hand.

---

[4]     Even this value, as represented by Defendants to investors, ultimately proved higher than the actual selling price of the World Health assets.

[5]     Brown's failure to consider actual market indications of value is consistent with the approach of a more senior valuation expert at AlixPartners, Mr. Bruce

## II.   <u>Brown's Opinion is Unreliable</u>

Even in the context of the solvency analysis that Brown purports to conduct,

an objective determination must nevertheless be made as to the value of both assets

and liabilities – "[a]n entity is insolvent if its debts are greater than its assets, at *fair*

*valuations. . . . .*"  *In re Transit Group, Inc.*, 332 B.R. 45, 54 (M.D. Fla. 2005)

*quoting In re Golden Mane Acquisitions, Inc.*, 221 B.R. 963, 967 (N.D. Ala 1997)

(emphasis added).  In reaching his conclusion that there was adequate "coverage,"

Brown has assumed away a *required* step of even a solvency analysis – the

determination of the fair value of World Health's assets and liabilities.  In essence,

Brown has performed a solvency analysis without the analysis.

### A.   *Brown Incorrectly Calculated Enterprise Value*

Brown reaches his desired conclusion not through analysis, but through

circular logic.  For example, in his so-called "Public Market" valuation approach

he claims that the "enterprise value" of World Health is the outstanding value of its

equity securities added to the face value of all of its debt and preferred stock.

---

Den Uyl, who Brown testified he has worked most closely with in the course of his
past valuation "experience." (Brown Dep., 51:21-52:4).  As one court noted, "to
fail to consider the market offer method [of valuation] 'defies common sense and
what actually goes on in the marketplace.'"  *Unaka Co., Inc. v. Newman*, 2005 WL
1118065, at *30, n. 70 (E.D. Tenn. April 26, 2005) (noting that Den Uyl's failure
to analyze "market considerations at all in arriving at his valuation" constituted "a
fundamental flaw in his valuation process").

Brown Report at 17-18.  But because Brown incorrectly calculates "enterprise value" by simply adding the company's market capitalization to the face value of its outstanding debt, his "analysis" will *always* conclude that there is adequate "coverage" for all debt.  By adding equity to debt and then subtracting debt, as a matter of simple mathematics there will always be "coverage" – irrespective of the value assigned to the debt – so long as the company has a market capitalization greater than zero.

Contrary to Brown's assertion, a public company's enterprise value is not simply the sum of its market capitalization with the face value of all debt – it is determined "on a certain date [by] adding the *market value* of the company's publicly traded *debt and equity* securities on that date and subtracting its cash."  *In re Tousa, Inc*., 422 B.R. 783, 825-26 (S.D.Fla 1999).[6]  Brown's report completely ignores, much less subtracts out, any cash on hand by World Health that could presumably be used to satisfy any debt obligations of the company.

---

[6]      The Court in *Tousa* extensively criticized the solvency opinion proffered there by AlixPartners, signed by Mr. Den Uyl, because of the firm's "apparent lack of experience" in conducting solvency analysis, its "contingent fee arrangement," the fact that it "reached its bottom line opinion in remarkable speed" (less than two weeks), "relied heavily (if not exclusively) on the assumptions and projections provided by [the client]," failed to question assumptions used in financial models, employed methodologies that "as *both sides'* experts agreed at trial . . . were seriously flawed," and ultimately relied upon "financial projections [that] could produce 'bogus' numbers."  *In re Tousa*, 422 B.R. at 839-841 (emphasis in original).

But more significantly, in calculating enterprise value, Brown employs the *face* value, rather than the *market* value, of World Health's outstanding debt. As even Brown admits, particularly with respect to distressed companies such as World Health, the market value of the company's debt can be less than face value. Brown Dep. 187:15-188:20. Courts have explained that the "[t]he sum of the *market values* of a company's debt and equity is the textbook definition of enterprise value." *In re Tousa*, 422 B.R. at 826, *accord, e.g., In re Kamayan Holdings, LLC*, No. 10-br-54702, 2012 WL 1885177, at *2 (W.D. Tex. May 23, 2012) ("Enterprise value is the sum of the *market* value of debt and equity of a business"). Brown, by his own admission, made no effort to calculate the market value of World Health's debt. Brown Dep. 145:1-146:12. Instead, he concocted an analysis that will conclude that so long as a company's equity securities have a trading price of at least a penny, all of its debt obligations are "covered," no matter how much debt the company might have.[7] This analytical flaw likely overstates the enterprise value of World Health by at least as much as the amount by which the face value of the firm's debt exceeds its market value. *See* Pump Rebuttal Report ("PR") at 14-15. Putting aside the dubious relevance of World Health's

---

[7]     *See* Brown Report at 20 (arguing that "World Health's not insignificant market capitalization necessarily implies 100% coverage for the Company's debt holders and preferred shareholders . . .")

solvency to the issues at hand, Brown has ultimately put forth a solvency analysis

that cannot even reliably determine whether or not a company is solvent.  Brown's

unreliable analysis lacks the power to supply any meaningful information with

respect to any contested issue in this case.

### B.  Brown's Guideline Company Methodology Is Not Reliable

Defendants also point to Brown's purported use of the so-called Guideline

Company Approach ("GCA"), claiming the approach to be "well accepted" and

citing to cases for the proposition that the GCA approach can be employed in the

valuation of assets.  Mem. at 13, n. 13.  But there is simply no need to calculate the

enterprise value of what was a publicly-traded company like World Health to

determine the value of its equity securities,[8] and such a calculation lacks the power

to discern the value of its debt.  Neither Brown in his report, nor Defendants' in

Opposition cite to any treatise, rule, reported decision or other principle endorsing

---

[8]      In one of the cases cited by Defendants, *Taylor v. Am. Specialty Retailing Grp., Inc.,* C.A. No. 19239, 2003 WL 21753752, at *9 (Del. Ch. Ct. July 25, 2003), the Court calculated the value of a privately-held company to ultimately determine the value of its equity securities, but here, where there is a publicly available market value for equity securities, such a calculation is irrelevant.  *See Mandelbaum v. CIR,* T.C. Memo. 1995-255, 1995 WL 350881, at *10 (U.S. Tax. Ct. June 12, 1995) ("When stock is listed on an established securities market, the stock's value usually equals its listed market price").  Indeed, even Brown conceded that the World Health restricted stock position was overvalued. Brown Dep at 120:20-121:3 ("if the stock price for World Health as of August 31, 2005 was 22 cents a share, the value of that restricted stock is too high.").

any approach by which a GCA determination of enterprise value can be reliably used to value debt.

And although Defendants argue that equity valuations employing the GCA methodology can *generally* be conducted reliably, they are largely silent as to the reliability of Brown's analysis *in particular*. Again, Brown's calculation of enterprise value using a comparison of "comparable" public companies is unreliable for a number of reasons, not the least of which is that the financials of World Health that Brown uses to extrapolate annual revenue and earnings are patently unreliable – the company's stock price had collapsed in the midst of an accounting fraud investigation. Because the company never restated its financials, Brown offers no reason to believe that his extrapolated performance figures – which are derived from these tainted financials – are reliable. *See* PR at p. 11-12. Therefore, his calculations of World Health's earnings before interest, taxes, depreciation and amortization ("EBITDA") derived from these financials are flawed. Brown also implies a World Health enterprise value using so-called "comparable" companies that faced no accounting difficulties and were so much larger than World Health they cannot be reasonably viewed as "comparable." *See* PR at p. 13-15 (noting that the market capitalization of the two purportedly

comparable companies was $488 million and $636 million, respectively, compared to the $17 million market capitalization of World Health).[9]

Notably absent from Defendants' Opposition is *any* argument refuting the fact that Brown's "comparables" are not really comparable.[10]  Why Brown deemed "comparable" two companies with market capitalizations fully 25 to 35 times larger than World Health is not explained.  The use of insufficiently comparable companies is a well-established basis for excluding a GCA analysis in its entirety – "[a] comparable company analysis is only as valid as the 'comparable' firms upon which the analysis is based, are truly comparable." *See Prescott Group Small Cap, L.P. v. The Coleman Co., Inc.*, 2004 WL 2059515, *22-23 (Del. Ch. Sept. 8, 2004)

---

[9]     Moreover, Brown calculates the enterprise value of World Health by applying a multiple derived from these purported "comparable" companies to the purported EBITDA of World Health – an approach that at least one court has expressly found to be unreliable.  In *Tousa*, the court rejected a similar AlixPartners' solvency opinion because, among a multitude of other reasons, it "inappropriately used an EBITDA multiple in valuing the company," and a "focus on EBITDA [was] inappropriate, because the ratio of EBITDA to [total enterprise value] varies too widely across the range of comparable companies, suggesting that market participants do not consider it a stable valuation metric."  *In re Tousa*, 422 B.R. 828, 842.

[10]     Defendants point only to the fact that Brown applied a 33% "discount" to his methodology.  Putting aside the fact that Brown could articulate no scientific basis for his discount, he could not meaningfully explain why he applied only a 33% discount to his World Health valuation when – following disclosure of the accounting irregularities – the market itself "discounted" World Health's stock price by more than 90%.  Brown Dep. 106:5-109:8.

(rejecting expert's  comparable company analysis as unreliable in an appraisal

action, where 'none of [the expert's] 'comparables' was truly comparable to [the

company] in any meaningful sense, and none of them had economics similar to

[the company's]"); *In re Radiology Associates, Inc. Litig*., 611 A.2d 485, 489-90,

498 (Del. Ch. 1991) (finding expert's comparable company analysis unreliable in

appraisal action because of "noncomparability" of the selected companies: "At

some point, the differences become so large that the use of the comparable

company method becomes meaningless for valuation purposes.").  In his

supplemental declaration, Brown himself notes that the GCA approach may not be

appropriate where "there were not applicable guideline companies available for

comparison."  [Docket No. 85, Ex.4, ¶8].  Because Defendants offer the Court no

reason to believe that the "comparable" companies employed by Brown were in

fact comparable to World Health, they fail to meet their burden of establishing the

reliability of his opinion.[11]

---

[11]     Moreover, even the cases cited by Defendants reveal that typically a
valuation approach like the GCA approach is combined with another method of
valuation – the much more commonly used and widely accepted "discounted cash
flow" ("DCF") analysis – to provide a "check" on the results obtained.  *E.g.,
Taylor*, 2003 WL 21753752, at *2 (noting expert's utilization of DCF approach
along with guideline companies and comparable transactions).  In the absence of
such a "check," a study such as Brown's is insufficiently reliable to be admitted.
Where an expert "used two methods in determining the value [of a business], both
approaches considered 'market' approaches which apply a multiple computed from

Defendants have failed to satisfy their burden of demonstrating the reliability of Brown's opinion.  Brown used unreliable financial data, employed an incorrect methodology to calculate enterprise value, failed to undertake alternative approaches such as a discounted cash flow analysis, and failed to take into account real world indications of interest, sales, transaction figures, or any other analysis or study that could reasonably permit any "check" on his erroneous conclusions.  His opinion is simply unreliable.

## Conclusion

The Brown report is unreliable, irrelevant to the issues at hand, and is far more likely to confuse and mislead a trier of fact than to shed light on any pertinent issue.  The motion to exclude the report and the expert testimony of Brown should be granted.

---

data derived from other alleged comparable companies" this methodology standing alone is inadequate, as the "failure to use the DCF method amounts to a material flaw in his methodology sufficient to bar his testimony as an expert because his conclusions lack 'good grounds.'"  *In re Med. Diversified, Inc*., 334 B.R. 89, 99 (E.D.N.Y. 2005) (excluding valuation based solely on Guideline Company Multiple Approach and Guideline Transaction Multiple Approach); *accord, Lippe v. Bairnco Corp*., 288 B.R. 678, 701 (S.D.N.Y. 2003), *aff'd* 99 Fed. Appx. 274 (2d Cir. 2004) (noting, in excluding expert, "[b]y failing to use the DCF method and relying solely on the comparable companies method, [the expert] did not have an ability to do a 'check' on his determinations.").

Dated:  October 12, 2012          Respectfully submitted,

By:     /s/ *M. Graham Loomis*
        M. Graham Loomis
        Ga. Bar No. 457868
        U.S. Securities and Exchange Commission
        950 East Paces Ferry Road, Suite 900
        Atlanta, Georgia 30326
        Email:      LoomisM@sec.gov
        Phone:      (404) 842-7627
        Fax:        (404) 842-7633

        */s/ David Williams*
        David Williams (*pro hac vice*)
        John J. Bowers (*pro hac vice*)
        Adam S. Aderton (*pro hac vice*)
        U.S. Securities and Exchange Commission
        100 F Street, N.E.
        Washington, D.C. 20549-4010
        Email:      WilliamsDav@sec.gov
        Phone:      (202) 551-4548 (Williams)
        Fax:        (202) 772-9246 (Williams)

        *Attorneys for Plaintiff Securities and*
        *Exchange Commission*

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

I hereby certify that on October 12, 2012, I electronically filed Plaintiff

Securities and Exchange Commission's Motion In Limine to Exclude The Expert

Opinions of Marc J. Brown and Memorandum of Law with the Clerk of the Court

using the CM/ECF system which will automatically send email notification of such

filing to the following attorneys of record:

Ross A. Albert
Morris, Manning & Martin, LLP
990 Hammond Drive
Suite 300
Atlanta, GA 30328, USA

Stavroula E. Lambrakopoulos
Richard James Mitchell
Matthew B. Bowman
K & L Gates-DC
1601 K Street, NW
Washington, DC 20006

I also certify under LR 7.1 D, NDGa that this motion has been prepared with

14-point Times New Roman font, as required by LR 5.1C, NDGa.

*/s/ David Williams*
David Williams (*pro hac vice*)
U.S. Securities and Exchange Commission