IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| Plaintiff, | |
| v. | |
| **PAUL T. MANNION, JR., ANDREW S. RECKLES, PEF ADVISORS LTD.,** and **PEF ADVISORS LLC,** | 1:10-cv-3374-WSD |
| Defendants, | |
| and | |
| **PALISADES MASTER FUND, L.P.,** | |
| Relief Defendant. | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Reconsideration [89] and Defendants' Motion for Leave to Amend Their Answer to the Complaint [123] ("Motion to Amend").

## I.  BACKGROUND

This is a civil enforcement action brought by the Securities and Exchange Commission ("Commission") under the Securities Exchange Act of 1934 ("Exchange Act") and the Investment Advisers Act of 1940 ("Advisers Act"). On

October 19, 2010, the Commission filed its Complaint [1] against Defendants Paul T. Mannion, Jr. ("Mannion"), Andrew S. Reckles ("Reckles"), PEF Advisors Ltd. ("PEF Ltd."), and PEF Advisors LLC ("PEF LLC") (collectively, "Defendants"). The Complaint names Palisades Master Fund, L.P. (the "Fund") as Relief Defendant.  PEF Ltd. and PEF LLC are alleged to be the investment advisors to Palisades Equity Holdings Ltd. and Palisades Equity Fund, L.P., hedge funds that served as feeder funds for, and otherwise made investments through, the Fund. Mannion and Reckles are alleged to be the principals and co-owners of PEF Ltd. and PEF LLC.

     A.    <u>Commission's Allegations and Defendants' Motion to Dismiss</u>

In its Complaint, the Commission alleges various fraudulent schemes by Defendants, including that (i) in August, September, and October 2005, Defendants reported monthly "net asset values" ("NAVs") with inflated values of certain assets held by the Fund (the "Valuation Claim"), and (ii) in July and August 2005, Defendants personally exercised stock warrants belonging to the Fund (the "Misappropriation Claim").[1]  In Count I of the Complaint, the Commission alleges

---

[1] The Complaint also alleges, in connection with the Misappropriation Claim, that Defendants misappropriated certain other assets belonging to the Fund, and the Complaint alleges a separate scheme involving the short sale of certain securities. These claims have been dismissed from this action, and they are not presently at issue.

that Defendants' actions in connection with these alleged schemes constitute violations of Section 10(b) of the Exchange Act and Rule 10b-5 of the Commission's Rules Under the Exchange Act. In Count II, the Commission alleges that Defendants' actions constitute violations of subsection (1) of Section 206 of the Advisers Act. In Count III, the Commission alleges that Defendants' actions constitute violations of subsection (2) of Section 206 of the Advisers Act.

On January 20, 2011, Defendants filed their Motion to Dismiss [18] under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. On June 2, 2011, the Court entered its Order [31] on the Motion to Dismiss (the "Motion to Dismiss Order"). With respect to Counts II and III, the Court held that Section 206 applies to the Claims only to the extent Defendants' conduct was directed to the Fund, Defendants' actual "client," as opposed to individual investors in the Fund. The Court thus limited Defendants' liability for the Valuation Claim in Counts II and III to the amount of Defendants' increased management fees received as a result of the allegedly inflated valuations.[2]

B.   Motions for Summary Judgment

On June 28, 2012, and July 30, 2012, the Commission and Defendants filed

---

[2] The Court also limited the scope of the Valuation Claim in Count I to the single new investor identified in the Complaint as having invested $3 million in the Fund. This limitation is not presently at issue.

cross Motions for Summary Judgment [59, 66].  On March 25, 2013, the Court entered its Order [87] on the motions (the "Summary Judgment Order").  With respect to the Valuation Claim, the Court found that the record lacked evidence of the amount of the alleged overvaluations stated in the September and October 2005 NAVs.  On this basis, the Court concluded that the trier of fact could not determine the amount by which the overvaluations inflated Defendants' management fees and could not, therefore, determine whether the overvaluations were "material" under Section 206.  The Court thus granted Defendants summary judgment on the Valuation Claim asserted under Section 206 based on the September and October 2005 NAVs.[3]

With respect to the Misappropriation Claim, the Court found that the record showed a genuine dispute as to whether Defendants acted with scienter under Sections 10(b) and 206(1).  The Court thus denied summary judgment to both the Commission and Defendants on the Misappropriation Claim asserted under

---

[3] The Court further found that, with respect to the August 2005 NAV, the record contained sufficient evidence of "materiality" to allow the Section 206 claims based on the August 2005 NAV to proceed.  The Court granted Defendants summary judgment on all components of the Valuation Claim asserted under Section 10(b).

Sections 10(b) and 206(1).[4]

    C.    <u>Commission's Motion for Reconsideration</u>

On April 22, 2013, the Commission filed its Motion for Reconsideration. The Commission first contends that the Court erred in granting Defendant summary judgment on the Valuation Claim under Section 206 based on the September and October 2005 NAVs. The Commission argues that the Court improperly limited the scope of the claim to Defendants' inflated management fees because, after the Court issued its Motion to Dismiss Order and limited the Section 206 Valuation Claim to inflated management fees, the Eleventh Circuit clarified that a hedge fund's individual investors may be considered an investment adviser's "clients" for purposes of Section 206 liability.

The Commission next contends that the Court erred in denying the Commission summary judgment on the Misappropriation Claim under Sections 10(b) and 206(1). The Commission argues, as it did in its Motion for Summary Judgment, that the record establishes, as a matter of law, that Defendants acted with scienter in connection with this claim.

---

[4] The Court found that the record established Defendants' liability under Section 206(2), and the Court granted the Commission summary judgment on its Section 206(2) Misappropriation Claim.

D.     Defendants' Motion to Amend

On July 26, 2013, Defendants filed their Motion to Amend their Answer to assert the statute of limitations as a defense to their liability for punitive damages arising out of the Misappropriation Claim.  The Commission opposes the Motion to Amend on the ground that the statute of limitations defense is precluded by a tolling agreement (the "Tolling Agreement") entered into among the parties.

## II.    COMMISSION'S MOTION FOR RECONSIDERATION

A.     Legal Standard

A district court has discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered.  See Fed. R. Civ. P. 54(b); see also Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1315 (11th Cir. 2000); McCoy v. Macon Water Auth., 966 F. Supp. 1209, 1222 (M.D. Ga. 1997).  The Court does not reconsider its orders as a matter of routine practice.  See LR 7.2 E, NDGa.  A motion for reconsideration is appropriate only where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.  See Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999); Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).  A motion for reconsideration should

not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously-filed motion.  Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); see also Pres. Endangered Areas, 916 F. Supp. at 1560 ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time.").

    B.    Analysis

        1.    *Limitation of Valuation Claim under Section 206 to Inflated Management Fees*

The Commission first seeks reconsideration of the Court's grant of summary judgment to Defendants on the portion of the Valuation Claim under Section 206 based on the September and October 2005 NAVs.  In the Motion to Dismiss Order, the Court found that the Commission's Section 206 claim was limited to Defendants' inflated management fees resulting from the alleged overvaluations.  In the Summary Judgment Order, the Court found that the record lacked any evidence of the amount by which Defendants' September and October 2005 management fees were inflated.  The Commission contends that the Court's limitation of its analysis to management fees was improper based on SEC v. Lauer, 478 F. App'x 550 (11th Cir. 2012) (per curiam), an unpublished Eleventh Circuit opinion issued after the Court's Motion to Dismiss Order.

7

Section 206 requires proof of a "material" misrepresentation or omission to a "client."  See 15U.S.C. § 80b-6(1)–(2); SEC v. Tambone, 550 F.3d 106, 146 (1st Cir. 2008), withdrawn and reinstated in part, 597 F.3d 436 (1st Cir. 2010) (en banc).  In the Motion to Dismiss Order, the Court found that the Complaint showed that Defendants' "client" for purposes of Section 206 was the Fund itself, not the Fund's individual investors.  The Commission asks the Court to reconsider this conclusion.[5]  The Commission thus seeks reconsideration of the Court's ruling on Defendants' Motion to Dismiss.

As discussed in the Motion to Dismiss Order, an investment adviser's "client," under Section 206, is a person who receives individualized advice from the adviser.  See Goldstein v. SEC, 451 F.3d 873, 881 (D.C. Cir. 2006).  In Goldstein, the court explained that, generally, a hedge fund manager's client is the hedge fund itself, and not the investors in the fund.  Id.  This is because the manager's fiduciary duties are owed to the fund, whose interests can diverge from those of the fund's investors.  Id.  An exception to the general rule exists where the hedge fund manager directly advises the investor and a fiduciary relationship can

---

[5] The Commission does not ask the Court to reconsider its conclusion, in the Summary Judgment Order, that the record lacks evidence showing that the allegedly inflated management fees in September and October 2005 were "material."

be inferred.  See United States v. Lay, 612 F.3d 440, 446–47 (6th Cir. 2010).  In Lay, the manager advised an investor with respect to investments in a bonds fund.  Id. at 442.  There was no dispute that the investor was the manager's "client" with respect to these investments.  Id. at 446.  The manager later created, and became the manager of, a hedge fund.  Id. at 442.  The investor shifted some of its assets into the hedge fund to give the manager greater flexibility with respect to investing those assets.  Id.  The investor was the only investor in the hedge fund.  Id. at 446.  The court found that these facts showed that the investor's participation in the hedge fund was "part of a single investment strategy" advised by the manager and that, under the circumstances, a jury could find that the manager owed the investor fiduciary duties and that the investor was the manager's "client" with respect to the hedge fund.  Id.

In the Motion to Dismiss Order, the Court found that the allegations in the Commission's Complaint do not show that the exception, explained in Lay, applies to this case.  Unlike in Lay, the Complaint does not allege any facts showing a fiduciary relationship between Defendants and the Fund's investors.  The only contact between Defendants and the investors described in the Complaint is a single letter in which Defendants request the investors' permission to create a side pocket.  This letter, as described in the Complaint, does not show that Defendants

gave individualized advice to the investors or had individualized relationships with the investors. The Court thus concluded, under the general rule, that Defendants' "client" under Section 206 was the Fund.

On April 19, 2012, the Eleventh Circuit issued its decision in Lauer. In Lauer, the court recognized both the general rule described in Goldstein—that the client of a hedge fund manager is only the hedge fund itself—and the exception described in Lay. See Lauer, 478 F. App'x at 556–57. The court found, on the facts of that case, that the Lay exception could apply because the defendant-manager "proffered advice directly to the [hedge fund's] investors when he hosted meetings and teleconferences and when he suggested in the [hedge fund's] newsletter that his market strategy could beat market returns." Id. at 557.

Contrary to the Commission's argument, the Lauer court did not hold that hedge fund investors are necessarily the manager's clients for purposes of Section 206. See F. App'x at 557 ("[Defendant] is correct that, since many hedge funds have a passive investor model, not all hedge fund investors are automatically to be treated as clients of a hedge fund adviser."). The Lauer court simply recognized, consistent with this Court's Motion to Dismiss Order, that investors can be considered clients when the manager gives individualized advice to the investors. See id. The Commission did not plead, and does not now point to facts to show,

that Defendants advised investors in the Fund, and the Commission's claims requiring such a relationship were required to be dismissed.  Lauer is not an "intervening development or change in controlling law," and the Commission's Motion for Reconsideration of the Motion to Dismiss Order is denied.

### 2. *Scienter and the Misappropriation Claim*

The Commission next seeks reconsideration of the Court's denial of summary judgment to the Commission on the Misappropriation Claim under Sections 10(b) and 206(1).  The Court denied the Commission summary judgment on these claims after determining that a genuine dispute existed as to whether Defendants acted with scienter, an element of both Sections 10(b) and 206(1).  The Commission argues that the Court's finding was erroneous.

In its Motion for Summary Judgment, the Commission argued that, by personally exercising stock warrants belonging to the Fund, Defendants' scienter could be "inferred" simply as a matter of law.  To support this argument, the Commission relied on a line of cases holding that scienter is established when an adviser takes investors' funds "for personal benefit."  (See Comm'n's Br. Supp. MSJ [59-1] at 16–18.)  The Court found that the record did not show that Defendants exercised the warrants "for personal benefit" and that Defendants stated that their actions were performed in an attempt to bolster the Fund.  The

Court thus rejected the Commission's argument that scienter was established as a matter of law.

In the Motion for Reconsideration, the Commission advances a new litigating position regarding how scienter is established: that Defendants were "reckless" in *failing to disclose* their exercise of the warrants, and that this "recklessness" shows scienter as a matter of law. The Court does not consider this argument because it was not, but could have been, raised in the Commission's original briefs. See Bryan, 246 F. Supp. 2d 1256.[6] The Commission's Motion for

---

[6] The Commission states that it did originally raise this argument because, in its summary judgment brief, it stated that "the assignment [of the warrants to Defendants] was not disclosed to investors until nearly a year later." (See Comm'n's Br. Supp. MSJ [59-1] at 17.) Although the Commission made this factual assertion, the Commission did not argue that the fact of the failure to disclose is sufficient to establish scienter. As noted above, the Commission argued that scienter should be inferred because Defendants exercised the warrants for personal benefit—an assertion that is disputed and not firmly established in the record. The Court notes that, in advancing its non-disclosure argument, the Commission does not cite any authority that the failure to disclose a misappropriation proves, as a matter of law, scienter with respect to the misappropriation. The Commission relies on cases holding that an adviser's misleading statements or failure to disclose a personal interest in a recommended course of action constitutes fraud under the securities laws. See, e.g., SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180 (1963) (holding that an adviser's undisclosed "scalping"—the purchase of a security, the subsequent recommendation to investors to buy the security, and the subsequent sale of the security at a profit generated by the investors' purchase—is fraud under the Advisers Act); Belmont v. MB Inv. Partners, Inc., 708 F.3d 470 (3d Cir. 2013) (holding that "an adviser may benefit from a transaction recommended to a client if, and only if, that benefit and all related details of the transaction are fully

12

Reconsideration on the question of Defendants' scienter is denied.

## III. DEFENDANTS' MOTION TO AMEND

In their Motion to Amend, Defendants seek leave to file an amended answer asserting, for the first time, the statute of limitations as a defense to their liability for punitive damages on the Misappropriation Claim. Defendants assert that their motion is brought in response to Gabelli v. SEC, 133 S. Ct. 1216 (2013). In Gabelli, issued earlier this year, the Supreme Court held that, in cases brought by the government, the five-year period of limitations for enforcing a "civil fine, penalty, or forfeiture" prescribed in 28 U.S.C. § 2462 begins to run when the act giving rise to the liability occurs, not when the government discovers the act. 133 S. Ct. at 1221. In their proposed amended answer, Defendants assert that their liability for punitive damages based on the Misappropriation Claim is time-barred because Defendants' alleged exercise of the stock warrants occurred on August 12, 2005, and this action was not filed until October 19, 2010—just over one month

---

disclosed"); SEC v. Carriba Air, Inc., 681 F.2d 1318 (11th Cir. 1982) (holding that the distribution of a prospectus known to be false was "extremely reckless" and sufficient to show scienter on a motion for a preliminary injunction). In the Misappropriation Claim, the Commission does not allege that Defendants' violated the securities laws by making misleading statements or by failing to disclose a conflict of interest benefiting Defendants. The Commission alleges that Defendants violated the securities laws by personally exercising the Fund's stock warrants. To constitute a violation of Sections 10(b) and 206(1), this action, not the non-disclosure, was required to be committed with scienter.

beyond the five-year limitations period.

Rule 15(a) provides that, after a party has amended its pleading once as a matter of right, the party may amend its pleading again "only with the opposing party's written consent or the court's leave." The Rule provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962).

The Commission argues that leave should be denied here because Defendants' proposed amendment would be futile. The Commission argues that Defendants' punitive damages liability is not time-barred because the Tolling Agreement, entered into by Defendants and the Commission, tolled the limitations period for at least one year.[7]

---

[7] Defendants argue that the Court should "freely grant" the Motion to Amend and should consider the applicability of the Tolling Agreement only later in connection with a motion *in limine*. The Court disagrees. "Leave to amend a [pleading] is futile when the [pleading] as amended would . . . be immediately subject to summary judgment . . . ." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir.

14

The Tolling Agreement provides, in relevant part, as follows:

> WHEREAS, the Division of Enforcement ("Division") of the United States Securities and Exchange Commission ("Commission") has notified Andrew S. Reckles, Paul T. Mannion, Jr., . . . Palisades Master Fund, L.P., PEF Advisors, LLC, [and] PEF Advisors, Ltd. . . . (collectively, "Palisades"), through counsel, that the Division is conducting an investigation entitled In the Matter of Palisades Equity Fund (HO-10513) (the "investigation") to determine whether there have been violations of certain provisions of the federal securities laws;
>
> ACCORDINGLY, IT IS HEREBY AGREED by and between the parties that:
>
> 1.   the running of any statute of limitations applicable to any action or proceeding against Palisades authorized, instituted, or brought by or on behalf of the Commission or to which the Commission is a party arising out of the investigation ("any proceeding"), including any sanctions or relief that may be imposed therein, is tolled and suspended for the period beginning on August 29, 2007 through August 29, 2008 (the "tolling period") . . . .

(Decl. S. Lambrakopoulos Ex. 7 [105-7].)

Defendants argue that the Tolling Agreement does not apply to the Misappropriation Claim because, at the time of the execution of the Tolling Agreement, the "HO-10513" investigation, being conducted from Washington, did

---

2007) (citing Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004)). There is no dispute that, if the Tolling Agreement applies here, Defendants' statute of limitations defense is precluded and the Commission would be entitled to summary judgment on the defense. There is no reason to defer ruling on this issue until a motion *in limine* is presented.

not include investigation of the Misappropriation Claim. Defendants state that the Commission only later added the Misappropriation Claim to its "HO-10513" investigation based on information that it learned in a separate investigation, being conducted in Philadelphia. Defendants argue that the Tolling Agreement thus does not apply or that there is at least an ambiguity in the applicability of the Tolling Agreement warranting the creation of a record of parol evidence.

Defendants' argument requires the Court to construe the Tolling Agreement to determine whether the "investigation" includes the Commission's subsequent investigation into the Misappropriation Claim. "The construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1. "Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains." Travelers Ins. Co. v. Blakey, 342 S.E.2d 308, 309 (Ga. 1986) (per curiam) (quoting Am. Cas. Co. v. Crain-Daly Volkswagen, Inc., 200 S.E.2d 281, 283 (Ga. Ct. App. 1973)). "The hallmark of contract construction is to ascertain the intention of the parties. . . . [W]hen the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent." Infinity Gen. Ins. Co. v. Litton, 707 S.E.2d 885, 888 (Ga. Ct. App. 2011).

The Tolling Agreement defines the "investigation" as the "HO-10513"

investigation that the Commission "is conducting" into "violations of certain provisions of the federal securities laws." This definition plainly describes an ongoing investigation into securities law violations generally. The term is not limited to the content or findings of the investigation at a particular time. The language unambiguously shows that the parties understood that the investigation was not complete. Defendants nevertheless agreed to toll the limitations periods for claims "arising out of" this ongoing investigation. The contract does not limit this tolling to claims arising out of facts already discovered in the investigation. The Court concludes that the plain language of the Tolling Agreement shows that the Tolling Agreement applies to the Misappropriation Claim. To allow Defendants to assert the statute of limitations defense, therefore, would be futile, and Defendants' Motion to Amend is denied.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration [89] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to Amend Their Answer to the Complaint [123] is **DENIED**.

**SO ORDERED** this 12th day of November, 2013.

*/s/ William S. Duffey*
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE