**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br><br>v.<br><br>PAUL T. MANNION, JR., *et al.*,<br>Defendants. | Civil Action No.: 10-cv-03374-WSD |

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR IMPOSITION REMEDIES

By: /s/ Ross A. Albert
Ross A. Albert, Esq.
Ga. Bar No. 007749
Morris, Manning, and Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326
O: 404.504.7700
F: 404.365.9532
ralbert@mmmlaw.com

By: /s/ Stavroula E. Lambrakopoulos
Stavroula E. Lambrakopoulos, Esq.
Stephen J. Crimmins, Esq.
Erin Ardale Koeppel, Esq.
Richard James Mitchell, Esq.
Matthew B. Bowman, Esq.
K&L Gates LLP
1601 K Street, N.W.
Washington, D.C. 20006-1600
O: 202.778.9248
F: 202.778.9100
stavroula.lambrakopoulos@klgates.com

*Attorneys for Defendants*

Dated: June 9, 2014

# CONTENTS

**I. INTRODUCTION** .......... 1
II. FACTS RELATING TO THE DETERMINATION OF REMEDIES .......... 6
A. The Relevant Facts Show that the Remedies Sought by the SEC are Disproportionate to the Violation at Issue .......... 6
B. The SEC Improperly Introduces Irrelevant and Unproven Allegations as Facts Unrelated to the Imposition of Remedies .......... 7
1. Only One Violation Remains at Issue .......... 8
2. The SEC May Not Surreptitiously Resurrect Claims .......... 9
III. THE IMPOSITION OF THE REQUESTED REMEDIES IS NOT SUPPORTED BY THE FACTS OR THE LAW .......... 10
A. Additional Disgorgement is Not Warranted .......... 11
1. Defendants Have Not Been Unjustly Enriched and Have Disgorged Any Sales Proceeds Despite their Losses .......... 12
2. The SEC's Alleged Value of the World Health Warrants is Specious .......... 13
B. Injunctive Relief is Not Warranted Nor Serves any Public Interest .......... 15
1. "Obey the Law" Injunctions are Unenforceable .......... 15
2. An Injunction is Not Required in this Instance .......... 16
C. The Court's Discretion to Impose Civil Monetary Penalties is Bound by the Facts .......... 24
IV. CONCLUSION .......... 25

This Opposition to the Motion of Plaintiff Securities and Exchange Commission ("SEC" or "Plaintiff") for Imposition of Remedies ("Remedies Motion"), is submitted by Defendants Paul T. Mannion and Andrew S. Reckles (collectively the "Fund Managers"), PEF Advisors Ltd., PEF Advisors LLC (collectively, "Defendants"), and Relief Defendant Palisades Master Fund LP ("Palisades" or the "Fund"), pursuant to the Court's order of March 26, 2014.

## I. INTRODUCTION

Defendants are nearing the end of a nine-year odyssey defending against the SEC's ill-founded quest to establish securities fraud claims against them on the basis of their conduct as investment advisers to Palisades – a private hedge fund wound down years ago due to financial problems unrelated to the conduct at issue. The ship steered by the SEC throughout this journey foundered because it was riddled with holes in overstated claims that bore no resemblance to the proven facts and applicable law. Left with one negligence-based claim to "remedy," the SEC seeks the maximum penalties it arguably could have obtained had it prevailed on its headline valuation claim rejected by the Court, as well as on the other claims that it voluntarily abandoned.[1]

---

[1] On March 25, 2013, the Court granted Defendants summary judgment with respect to most of the fraud claims arising out their valuation of the Fund's debt and securities in World Health Alternatives, Inc. ("World Health") over a three month period in 2005 ("Valuation Claim"). Judgment was also granted in favor of Defendants as to two claims that the SEC abandoned during summary judgment

A sole matter remains to be litigated here: what remedies – if any – should this Court impose upon Defendants in connection with the only claim established by the SEC on summary judgment. The Court found Defendants in violation of Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") for their August 2005 transfer and exercise of World Health warrants originally issued to Palisades, and their purchase of the underlying shares (the "Warrant Exercise").[2]

The Warrant Exercise took place nine years ago. The Fund Managers, who were also significant investors in the Fund they had created, used their own $2 million to exercise a portion of the Fund's World Health warrants and to buy the underlying shares *at the request of* the issuer. They took this step to protect the Fund's already substantial investment in World Health. They never reaped any profit from these shares, as their value plummeted days after they received the news that World Health's Chief Executive Officer ("CEO") was a fraud. They

---

briefing: (i) Defendants' alleged misappropriation of Fund assets through two short-term advances which were repaid; and, (ii) their alleged misrepresentation of the Fund's short stock holdings in a private securities purchase agreement for stock in Radyne Corporation. *See* Order, March 25, 2013 [ECF No. 87] (ruling on the parties' cross motions for summary judgment) (the "March 25 Order").

[2] On the eve of the scheduled jury trial, the SEC moved to voluntarily dismiss with prejudice its Valuation Claim and claims that the Warrant Exercise constituted a scienter-based violation of Advisers Act Section 206(1) and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 thereunder. [ECF No. 138]. Defendants consented to this motion since these claims lack merit. The SEC's Consent Motion remains pending. Defendants preserve their right to appeal the Court's judgment on the Section 206(2) claim.

sold the shares at a significant loss. Notwithstanding, they remedied their conduct by reducing their interest in the Fund by the amount of the gross proceeds that they had received in the fire sale, they disclosed to their investors what they had done, and they told the SEC. Defendants took these remedial measures ***eight*** years ago — long before the SEC brought its lawsuit, or even hinted that its staff viewed the conduct as securities fraud.

Regardless of the shambles of its case, the SEC now seeks: (i) an "obey the law" permanent injunction as to Advisers Act Section 206(2); (ii) disgorgement of $1,723,256 in alleged paper profits from the purchase of the Warrant shares; (iii) a "substantial" civil monetary penalty typically reserved for the most egregious of violations; and (iv) prejudgment interest. Outrageously calling the transaction a "theft", and hoping that the Court does not notice that this is a civil matter, the SEC besmirches Defendants' intentions, ignores their remedies, inflates the value of the warrants, and seeks to forever banish the Fund Managers from the securities industry.

Despite their blustering, the SEC has failed to establish, on its face, any entitlement to the draconian remedies that it seeks based on the narrow conduct before this Court. In a tacit recognition that the facts underlying the Warrant Exercise fall short of the type of conduct that merits such remedies, the SEC dredges the bottom of the ocean to surface unproven allegations of unrelated

misconduct based on improper inferences drawn from the record. Such allegations were never pled by the SEC in its Complaint despite two staff investigations spanning five years, and nearly four years of litigation.

Disturbingly, in a sleight of hand that should not be countenanced by the Court, the SEC effectively deprives Defendants of their Seventh Amendment rights to have the claims decided by a jury. On the one hand, the SEC voluntarily dismisses all remaining scienter-based claims, purportedly to conserve resources while contending that the same remedies are also available solely on the basis of the Court's Section 206(2) finding. On the other hand, the SEC asks the Court to impose remedies on the basis of the same unproven allegations of scienter and other misconduct that underlie those lost or abandoned claims, as if those allegations have been proven. Any doubt as to the SEC's intentions is dispelled by the SEC's extensive witness and trial exhibit lists for the remedies hearing which are a virtual mirror image of its previous lists for the jury trial for all of its claims.[3]

When the noise of the SEC's unproven, irrelevant and previously un-asserted allegations fades away, the Court is left with a discrete matter that requires no further remedy beyond the significant steps taken by Defendants eight years ago. No interest of the public needs further protection. No ill-gotten gains ever

[3] The SEC has disclosed that it may call 10 witnesses to testify and introduce 168 exhibits at the evidentiary hearing on remedies.

enriched Defendants and now should be disgorged. No nascent misconduct needs to be prevented. No finding of scienter has been made as to any of the Defendants, and any allegations of such conduct are no longer before the Court.

Instead, the SEC's request for remedies should be rejected because:

- First, disgorgement is not appropriate where Defendants received no ill-gotten gains, used their own funds to purchase the underlying shares, and lost that money but still restored all sales proceeds to the Fund. The SEC's valuation of the warrants is specious at best, and any order requiring disgorgement of alleged theoretical gains is unprecedented.

- Second, the "obey-the-law" injunctive relief sought by the SEC is not available in the Eleventh Circuit. Even injunctive relief limited to specific conduct is unnecessary and inappropriate given the staleness and nature of the conduct at issue and the low likelihood of future violations. This is particularly true in light of Defendants' prior remedies, their lack of scienter, their clean record, and the collateral consequences to Defendants, which could include a *de facto* bar from working in the securities industry.

- Third, a third-tier civil monetary penalty intended to punish and deter is unwarranted in light of the lack of any scienter by Defendants and the remedial steps they instituted long ago. Defendants submit that no penalty is warranted, or, at most, nothing beyond a first-tier penalty of less than $5,000. Nor is any prejudgment interest due.

The impact of the Court's decision on remedies transcends this case. The imposition of a permanent injunction effectively bars the Fund Managers from the financial services industry.[4] Nonetheless, the SEC has failed to establish any basis

---

[4] And to ensure that, the SEC intends to pile on the Court's punishment by seeking an administrative order to retroactively enforce the collateral bar provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), enacted ***five*** years after the conduct issue. While that issue is currently

for the equitable relief it seeks given the proven facts and the conduct at issue. There is no ill-gotten gain to disgorge, no misconduct to remedy further, and no likelihood of future misconduct that must be deterred by the imposition of career-ending injunctive relief and bar orders. The SEC's motion should be denied.

## II. FACTS RELATING TO THE DETERMINATION OF REMEDIES

### A. The Relevant Facts Show that the Remedies Sought by the SEC are Disproportionate to the Violation at Issue

Based on the facts relevant to the Warrant Exercise to be established at an evidentiary hearing, the SEC is not entitled to the remedies it seeks as they are not proportional to the violation at issue nor a valid exercise of the Court's discretion.

**First**, with respect to the specific exercise of the warrants at issue, the Defendants will establish that:

- the Fund's warrants were exercised in August 2005 at the pleading of World Health's then-CEO to assist the company in improving its balance sheet position prior to its earnings release;
- due to the Fund's already significant exposure to World Health, Defendants concluded that it was not desirable to use Fund assets to exercise the warrants;
- preservation of World Health and the value of the Fund's investment in World Health were the *exclusive* motivations for their actions;
- Defendants exercised the warrants personally by using $2 million of their own money to purchase the underlying common shares;

---

not before the Court, the SEC's intention is reflected in their aggressive pursuit of remedies from the Court.

- days after obtaining the shares, their value plummeted when World Health's CEO resigned amidst allegations of misconduct, and Defendants lost most of their investment; and,
- the Fund continued to hold at least one million other World Health warrants that it was never able to profitably exercise before World Health completely dissolved.

**Second**, with respect to the impact the exercise of the warrants had on the Fund and on the Fund Managers personally, the Defendants will establish that:

- the warrants at issue previously had been valued at zero by the Fund in accordance with the Fund's valuation policies disclosed to their investors and the Fund's external auditor;
- had the Fund exercised the warrants at issue, the Fund and its investors would have sustained the enormous losses that Defendants incurred, as they suffered a combined total loss of over $1.6 million;
- after consulting with counsel concerning the transaction, Defendants remedied their conduct by restoring to the Fund an amount equal to the sales proceeds from their sale of the shares; and,
- well before the SEC sought to allege that any violation occurred, Defendants disclosed their conduct and their remedial steps to the Fund's investors and to the SEC.

### B. The SEC Improperly Introduces Irrelevant and Unproven Allegations as Facts Unrelated to the Imposition of Remedies

In its effort to tar brush Defendants as bad actors worthy of draconian remedies, the SEC has cobbled together numerous unrelated allegations that are either unproven or never even pled by the SEC as a basis of any of its claims despite years of investigation and discovery by the SEC's staff. The SEC defends such tactics citing to *SEC v. Tourre*, 2014 WL 969442 (S.D.N.Y. Mar. 12, 2014) for the proposition that it is entitled to burden the Court with a series of miniature

bench trials outside the jury's presence to prove sundry allegations unrelated to the conduct underlying the Section 206(2) violation. (Br. at 5.) After the jury found the defendant in violation of several anti-fraud provisions of the securities laws, the *Tourre* considered a performance evaluation during the remedies phase, even though it had been excluded by the Court at trial on the basis of relevance. *Id.* at *5, n.10. But that was because the exhibit was directly relevant to determining the amount of the defendant's bonus to be included in the Court's disgorgement order. *Id.* Thus, *Tourre* does not support the Court's consideration of *any* evidence, but only evidence relevant to the Court's determination of the particularized remedy. *Id.* Here, Plaintiff intends to introduce a myriad of never-before adjudicated allegations in support of the remedies it seeks whose relevance is dubious at best. (*See e.g.*, Br. at 8-11.)

### 1. Only One Violation Remains at Issue

After abandoning its effort to prove the allegations in its Complaint, the SEC nonetheless insists upon trying its entire case in the context of the remedies phase. In particular, the SEC intends to argue that the transfer of the warrants by the Defendants was a part of a much broader "fraudulent scheme to enrich themselves at the expense of the Fund." (Br. at 9.) In support, the SEC references payments made to the Defendants by World Health for consulting services provided in the months prior to the revelation of the World Health fraud. The SEC ignores that

Defendants had raised millions of dollars in financing for World Health over a period of a year pursuant to their investment banking agreement with the company from a number of institutional investors including Palisades. They were compensated for those services including when procuring forbearance agreements and other concessions from those investors. The SEC's newly-advanced argument that such compensation constituted a wrongful act is at odds with earlier positions taken by the SEC staff.[5] The SEC also ignores that the Fund's offering memoranda fully disclosed that Defendants may receive compensation and make personal investment decisions conflicting with the decisions of the Fund. (*See* Palisades Confid. Offering Mem. at 8, 16 [Ex. 1 to ECF No. 66-5]).[6]

**2. The SEC May Not Surreptitiously Resurrect Claims**

The SEC demanded a jury when it filed its case. Due process requires that the consent of all parties be obtained prior to permitting the withdrawal of a jury demand. *See* Fed. R. Civ. P. 38(d). After the undisputed facts demonstrated that the SEC was not entitled to pursue most of the claims it pled, the government

---

[5] The compensation payments were the subject of an extensive investigation by the SEC starting in 2005, but the SEC decided not to proceed with any enforcement action on the basis of the payments and included no allegations pertaining to these payments in the instant complaint.

[6] Also unsupported are the SEC's allegations that Defendants were simultaneously buying World Health shares for the Fund to prop up their own holdings. They were significant investors in the Fund and the Fund's gains and losses impacted Defendants personally.

rightly concluded to dismiss the un-adjudicated scienter-based claims. But this decision cannot trump Defendants' procedural and Constitutional rights. In its latest salvo, the SEC makes clear that it intends to try its entire case in the remedies phase, notwithstanding its voluntary withdrawal of all remaining claims.[7]

## III. THE IMPOSITION OF THE REQUESTED REMEDIES IS NOT SUPPORTED BY THE FACTS OR THE LAW

The imposition of remedies by the Court is not warranted where, as here, the fundamental purpose of deterrence has already been achieved through the Section 206(2) finding and through Defendants' prior efforts to remedy the conduct. In fact, "[t]he essential nature of an SEC enforcement action is equitable and prophylactic; its primary purpose is to protect the public against harm, not to punish the offender." *SEC v. Coven*, 581 F.2d 1020, 1027-28 (2d. Cir. 1978). Indeed, with respect to the remedies of disgorgement, civil penalties, and

[7] The SEC's resource-saving rationale for withdrawing its claims is disingenuous, as it is flatly incongruous with its intent to introduce its entire case in the remedies phase as evidenced by its designations of witnesses and exhibits. Significant resources of the government and the Defendants will be expended in putting to proof the SEC's various allegations. In addition, the SEC has only just signaled that it intends to call an additional expert witness never previously disclosed to Defendants. Defendants intend to request leave to move for the preclusion of this undisclosed expert witness, as impermissible under the strictures of Fed. Civ. Proc. Rule 26.

injunctive relief, Courts have stated that the primary purpose of such remedies is to deter future violations of the federal securities laws.[8]

### A. Additional Disgorgement is Not Warranted

This Court has succinctly summarized the standards applicable to an order of disgorgement in the context of claims brought by the SEC:

> The remedy of disgorgement is designed both to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws. S*ee SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978). "The purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his ill-gotten gain." *Id.* Because disgorgement is remedial and not punitive, the court's power to order disgorgement "extends only to the amount with interest by which the defendant profited from his wrongdoing." (citation omitted).[9]

---

[8] *See e.g., SEC v. Monterosso*, No. 13-10341, 2014 WL 815403 at *8 (11th Cir. Mar. 3, 2014) ("Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations"); *SEC v. Kinnucan*, No. 12 CIV. 1230, 2014 WL 1244768 (S.D.N.Y. Mar. 25, 2014) ("Disgorgement has the 'primary purpose' of deterring future violations of the securities laws by forcing wrongdoers to give up ill-gotten gains"); *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 697 (9th Cir. 1978) ("The primary purpose of injunctive relief against violators of the federal securities laws is to deter future violations, not to punish the violators.")

[9] *SEC v. Phoenix Telecom, L.L.C.*, 231 F.Supp.2d 1223, 1225 (N.D. Ga. 2001) (internal citations omitted); *see also SEC v. Reynolds*, No. 06-CV-1801-RWS, 2010 WL 3943729, at *6 (N.D. Ga. Oct. 5, 2010) ("Disgorgement is designed both to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws.)

The focus of an order of disgorgement is not to make whole any victims, but rather to ensure that the wrongdoer has not been unjustly enriched by an ill-gotten gain.[10]

### 1. Defendants Have Not Been Unjustly Enriched and Have Disgorged Any Sales Proceeds Despite their Losses

Defendants have ***not*** been unjustly enriched by any ill-gotten gain.[11] Indeed, the Fund Managers each lost over $800,000 in connection with the exercise of the warrants. Moreover, notwithstanding their actual losses, the Fund Managers have already restored to the Fund the entirety of the proceeds of the warrant exercise.[12] The SEC's theory that Defendants misappropriated a corporate opportunity belonging to the Fund does not comport with the realities that the Fund was not going to exercise the opportunity, and that Defendants used their own money to

---

[10] *See MC Asset Recovery, LLC v. S. Co.*, No. 06-CV-0417, 2008 WL 8832805, at *3 (N.D. Ga. July 7, 2008) (differentiating disgorgement from restitution, and holding that the latter's purpose is to make an injured party whole whereas the former is intended to deprive a wrong doer from receiving a benefit). *Accord Monterosso*, 2014 WL 815403, at *7 ("Disgorgement is an equitable remedy intended to prevent unjust enrichment.").

[11] It is significant that the SEC's theory is focused on a hypothetical detriment purportedly experienced by the Fund, and not on any ill-gotten benefit received by the Defendants. Disgorgement is only proper to remedy an ill-gotten gain. *See MC Asset Recovery*, 2008 WL 8832805 at * 3.

[12] Plaintiff appears to question that Defendants restored the proceeds to the Fund, (Br. at 15-16), contrary to its pre-trial agreement to Stipulation 31 in the heavily negotiated Joint Pre-Trial Order describing such restoration. *See* June 17, 2013 Joint Pre-Trial Order, Attachment E at ¶ 31 [ECF No. 93-6].

buy the illiquid and speculative shares in order to help the company which constituted the Fund's largest investment.

Accordingly, it is beyond doubt that the Defendants have retained no ill-gotten gains, and further disgorgement is unwarranted.[13] Where, as here, the disgorgement valuation theory advanced by the SEC amounts to no more than a theoretical "paper gain" that hypothetically could have been realized by the Fund, the Court should not order disgorgement.[14]

### 2. The SEC's Alleged Value of the World Health Warrants is Specious

To the extent that Plaintiff intends to pursue further disgorgement from Defendants, the Court must resolve the proper valuation of the stock warrants, which is disputed. The strength of the SEC's case is further diminished by the lack

---

[13] The absurdity of Plaintiff's disgorgement demand is further highlighted by the rationale Plaintiff cites in seeking prejudgment interest. Plaintiff argues that "[w]ithout prejudgment interest, the [Defendants] would have benefitted from what in effect amounted to interest-free loans of the ill-gotten funds." (Br. at 18.) Illogically, on the one hand the SEC admits that the alleged ill-gotten gains are a pure fiction, and yet argues, on the other hand, that such "paper profits" have enriched the Defendants in the same way as an interest-free loan.

[14] *See SEC v. Miller*, 744 F.Supp.2d 1325, 1343 (N.D. Ga. 2010) (characterizing the SEC's disgorgement of gains theory, which relied upon the amount the wrong-doer paid from personal funds in order to satisfy a margin call as "more theoretical, than real" and declining to order disgorgement or prejudgment interest); *SEC v. Mortenson*, No. CV-04-2276, 2013 WL 991334, at *4 (E.D.N.Y. Mar. 11, 2013) ("The remedy of disgorgement 'consists of fact finding by a district court to determine the amount of money acquired through wrongdoing . . . .'")

of any appraisal or other reliable evidence regarding the actual value of the transferred warrants. At issue is the value of the "right" to exercise the underlying restricted shares, as contrasted with the "valuation" by the SEC's expert of the unrestricted saleable common shares on the date of exercise. In assigning a value of $1.7 million, the SEC presumes that the value of the stock warrants is equivalent to the difference between the exercise price and strike price of the stock on the day that the Defendants transferred the warrants.[15] The SEC has no witness who can testify as to the appropriate value of the stock warrants, nor can the SEC cite to any authorities for its overvaluation of the warrants.[16] Indeed, generally, experts

---

[15] The SEC's own expert has conceded that this measure is flawed because it would have been impossible to sell such a large block of thinly-traded stock such as World Health in a single day without depressing the sales price. In addition, the SEC's disgorgement value does not take into account the fact that Defendants, as limited partners of the Fund, collectively owned a *pro rata* interest in 22 percent of the warrants. If the Court concludes that the SEC's disgorgement figure is the appropriate measure, an offset is due for that proportion of the amount that would be due to Defendants as limited partners of the Fund with an pro rata ownership interest. Moreover, the SEC may not be able to overcome its subsequent finding that the shares underlying the warrants were not effectively registered and thus saleable without restriction by World Health's registration statement which was deemed ineffective by the SEC. *See* Compl. at ¶6 in *SEC v. Richard McDonald*, No. 09-cv-0165, (W.D. Pa. Dec. 23, 2009).

[16] To the extent that the SEC intends to introduce the testimony of Hugh Cohen on this point, Defendants seek leave to renew their *Daubert* challenge to Mr. Cohen. His opinions as to "hedge fund best practices" and his purported "valuation" of the shares underlying the warrants are irrelevant to the issues at hand, and fail to meet the reliability standards required by Rule 702 of the Federal Rules of Evidence. *See* Defs.' June 17, 2013 *Daubert* Mot. to Exclude the Expert Opinions of Hugh Cohen. [ECF No. 95]

valuing warrants use models to approximate the value.[17] Models commonly used, but not advanced by the SEC, include the Black-Scholes model.[18]

### B. Injunctive Relief is Not Warranted Nor Serves any Public Interest

#### 1. "Obey the Law" Injunctions are Unenforceable

Plaintiff seeks an order enjoining Defendants from engaging in future violations of Section 206 (2) of the Advisers Act [15 U.S.C. § 80b-6 (2)]. (Br. at 14). The injunctive relief sought is a classic "obey-the-law" injunction, as it repeats portions of the statute verbatim and a general statement concerning misappropriation of client assets and disclosure matters. (*Id*.) This language goes well beyond the conduct at issue here – the transfer and exercise by the investment

---

17 Under the Fund's valuation policy, the warrants were valued at zero. But under the SEC's hypothetical damages model, the Fund's hypothetical assets under management would be increased by the warrants' purported $1.7 million value. This would result in an offset for Defendants based on the advisory fees they would have earned but were not paid due to the resulting increase in the Fund's net asset value.

18 *R.A. Mackie & Co., L.P. v. Petrocorp Inc.*, 329 F. Supp. 2d 477, 513 (S.D.N.Y. 2004) (holding that the value of a stock warrant is the value of the right to a buy stock at an undetermined future date, and that the Black-Scholes method is reliable method for determining such value); *see also* Jason D. Gordon & Robert T. Ladd, Black-Scholes: A Claimant's Tool for Valuing Recovery in A Plan of Reorganization, Am. Bankr. Inst. J., Nov. 1998, at 14 (detailing the sensitivity of the Black-Scholes variables used in the pricing of stock warrants, and stating "Black-Scholes model is decidedly the most authoritative tool in the valuation of warrants."). Other options pricing models considered by experts include the Noreen–Wolfson model, and the Shelton model. *See Estate of Mellinger v. C.I.R.*, 112 T.C. 26, 40 (Aug. 30, 1999) (expert modeled stock options for fair value using Black-Scholes, Noreen-Wolfson, and Shelton models).

adviser of warrants originally assigned to the Fund – and lacks the precision required by Rule 65(d). But the Eleventh Circuit rejects such injunctions are inappropriate and unenforceable.[19] Without addressing any of these authorities, Plaintiff cherry-picks a sound byte from a recent Eleventh Circuit case, but ignores the broader holding of the case that the injunction may not merely track the statutory language. Otherwise, a "defendant reading the injunction would have little guidance on how to conform his conduct to the terms of the injunction." *Goble*, 682 F.3d at 951.[20]

**2. An Injunction is Not Required in this Instance**

Even assuming that Plaintiff could craft an appropriately precise injunction, the SEC still is not entitled to any injunction. The purpose of injunctive relief is to prevent the public from future harms, and an injunction should only issue if the SEC can "show a 'reasonable likelihood' that the defendant will violate the

---

19 *See SEC v. Smyth*, 420 F.3d 1225, 1233 (11th Cir. 2005) (citing cases and holding that obey-the-law injunctions are unenforceable); *SEC v. Sky Way Global, LLC*, 710 F. Supp. 2d 1274, 1280 (M.D. Fla. 2010) (denying Plaintiff's motion for "obey-the-law" injunction, and analyzing Constitutional implications of such injunctions); *see also SEC v. Goble*, 682 F.3d 934, 953 (11th Cir. 2012) (reaffirming *Smyth* holding and vacating injunction imposed by the District Court).

20 Strangely, the SEC's broad proposed language covers individuals and entities who are not parties to this case including any future employees of Defendants and, indeed, Defendants present and future lawyers.

securities laws in the future." *Id.* at 948.[21] To show a reasonable likelihood, "it will almost always be necessary for the Commission to demonstrate that the defendant's past sins have been the result of more than negligence. Because the SEC must show some likelihood of a future violation, defendants whose past actions have been in good faith are not likely to be enjoined." *Aaron v. SEC*, 446 U.S. 680, 703 (1980).

**a. An Injunction is Unprecedented in a Non-Scienter Case**

The SEC fails to identify a single case in any jurisdiction where injunctive relief has been issued by a Court on the basis of a sole non-scienter based violation of Section 206(2).[22] To the contrary, in the only Section 206(2) case on point that

---

[21] Citing no authority that stands for their proposition, the SEC advances a novel statutory construction argument that suggests an injunction is mandatory pursuant to the Advisers Act because the statute includes the words "has engaged," whereas in analogous portions of the Exchange Act, the statute appears to only be forward-looking. (Br. at 5.) Plaintiff ignores that the language "upon a proper showing," which is found in both statutes and has been interpreted by this Circuit to require that the SEC "establish that there is a reasonable likelihood that the defendant, if not enjoined, will engage in future violations of the securities laws." *SEC v. Mize*, 615 F.2d 1046, 1051 (5th Cir. 1980). Indeed, if the SEC's interpretation were accurate, the courts would be flooded by requests for injunctions for every violation of the Advisers Act, and that is simply not the case.

[22] *SEC v. Moran*, 944 F. Supp. 286 (S.D.N.Y. 1996) is readily distinguishable. The case involved numerous violations proven at trial, and the Court was swayed that the other factors involved in the granting of an injunction, most particularly the defendant's cavalier attitude respecting the real losses sustained by the defendant's clients and the defendant's inapprehension of his wrongful conduct, militated strongly in favor of imposing an injunction. *Id.* at 294.

Defendants have been able to locate, the SEC settled an action against an investment adviser that misappropriated warrants owned by its client in 44 separate instances without imposing an injunction.[23]

**b. The Impact of an Injunction is Disproportionate to the Conduct**

The SEC does not explain why it is seeking its most onerous penalty against Defendants in this case, when it has publicly settled more egregious cases on terms more proportional to the conduct at issue. Notwithstanding, "[a]n injunction is a ***drastic remedy, not a mild prophylactic***, and should not be obtained against one acting in good faith." *Aaron*, 446 U.S. at 703.[24] The Court's inquiry is guided by well-defined factors, including "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *Goble*,

---

[23] *In the Matter of M.A.G. Capital, LLC*, Advisers Act Rel. No. 2849, 2009 WL 510315 (Mar. 2, 2009). The distinctions between *M.A.G.* and the instant case are jarring: the conduct in *M.A.G.* was not self-reported by the respondents or isolated to a single transaction, the defendants were unjustly enriched by over $7.4 million, the fund was disadvantaged by paying the exercise cost of the warrants, and there no ancillary benefit to the fund was contemplated as part of the transactions. *Id.*

[24] Plaintiff's reliance on *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, is misplaced, as this case recites in dicta the standard for *preliminary* injunctive relief. *Id.* at n.2.

682 F.3d at 948. Additionally, when determining remedies, courts have also taken into account a defendant's cooperation with law enforcement.[25] As described below, all of these factors weigh against the imposition of any injunction here.[26]

### c. Defendants' Actions Were Undertaken in Good Faith and Not Found to Have Involved Scienter

Section 206(2) is a negligence-based provision which does not require proof of intent, *Moran*, 944 F. Supp. at 294, and the Court made no finding of scienter by Defendants.[27] Notwithstanding its abandonment of all scienter-based claims, the SEC claims that Defendants acted with scienter for the purposes of seeking an enhanced remedy.[28] As this Court observed, Plaintiffs' scienter was a question for

---

[25] *SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 332 (S.D.N.Y. 2007) (reducing the civil penalty sought by the SEC, in part, in recognition of defendant's cooperation).

[26] To the extent that the Court determines that it must evaluate the degree of scienter with which Defendants acted, Defendants are entitled to a full evidentiary hearing. *SEC v. M & A W., Inc.*, 538 F.3d 1043, 1055 (9th Cir. 2008) (reversing the grant of summary judgment to the SEC and ordering that a full evidentiary hearing must be held for the Court to assess scienter).

[27] The SEC correctly notes that scienter is not a prerequisite to the imposition of injunctive relief. (Br. at 7 citing *S.E.C. v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004)). However, the 11th Circuit does view scienter as an "important factor" in the determination. *Id.* (defendant's recidivism, failure to acknowledge the wrongful nature of his conduct, and his hiring of a convicted felon with past security law violations to control brokerage accounts was sufficient indicia of the likelihood of future violations).

[28] The SEC cites to several cases in which it has made the self-evident pronouncement that it considers cases of securities fraud to be especially serious. (Br. at 7.) The cases cited are notably different, in that each case involved one or more scienter-based claims of Advisers Act Section 206(1) and/or Exchange Act

the jury to determine. March 25 Order at 39. Instead, the SEC sidestepped its own jury demand and attempts to try the question of scienter in the context of the remedies phase.[29]

Defendants exercised the warrants in their own names in August 2005 at the pleading of World Health's then-CEO to assist the company in improving its balance sheet position prior to its earnings release. Defendants believed in good faith that their actions with respect to the exercise of the warrants would inure to the benefit of the Fund because the warrant exercise was completed for the purpose of improving World Health's balance sheet and, as a result the Fund's investments which constituted twenty percent of its portfolio at the time. The Fund Managers did not deem it prudent at that point in time to increase the Fund's investment by exercising the warrants. Subsequent sales of newly-registered Fund shares changed that decision and additional shares were later purchased for the Fund. But

---

Section 10(b). *See e.g.*, *In the Matter of Franz*, A.P. File No. 3-14960, 2013 WL 208970, *4 (Jan. 18, 2013); *In the Matter of Murray*, 94 SEC Docket 2032, 2008 WL 4964110, at *10 (Nov. 21, 2008); *In the Matter of Gibson*, 92 SEC Docket 1591, 2008 WL 294717, at *3 (Feb. 4, 2008); *Opulentica*, 479 F.Supp.2d at 329.

[29] Such an effort improperly end-runs Fed. R. Civ. Proc. 38(d) and deprives Defendants of a Seventh Amendment right to a jury determination. *See e.g.*, *S.E.C. v. Kopsky*, 537 F. Supp. 2d 1023, 1026 (E.D. Mo. 2008) (the Seventh Amendment right to jury trial arises in cases where the SEC seeks civil penalties). If the SEC had proceeded to trial with its originally pled claims under Section 206(1) and Exchange Act Section 10(b), it would have been bound by the fact-finding of the jury with respect to Defendants' scienter.

had the Fund exercised the warrants, the losses later borne by the Fund Managers would have been borne instead by the Fund.

### d. The Conduct at Issue Was Isolated

Defendants' culpable conduct was isolated to a single instance. There is no question that Defendants did not engage in any other warrant transfers. Instead, the SEC is now attempting to stitch together unrelated and abandoned allegations of wrong-doing in an effort to create the appearance of a broad multi-faceted fraudulent scheme. These arguments fail in the face of the isolated conduct at issue, the lack of any other regulatory enforcement actions against either Mr. Mannion or Mr. Reckles over, respectively, thirty and twenty years of employment in the securities industry, and the steps taken by Defendants to remedy the conduct at issue.

The SEC improperly tars both Defendants with a brush of bad conduct on the basis of securities arbitrations or customer complaints resolved long ago. (Br. at 9-10.) But the few securities arbitrations referenced related either to customer complaints about the conduct of brokers supervised by Mr. Mannion and settled many years ago or, in one instance involved a non-customer dispute arising out of Mr. Mannion's voluntary departure from employment at another broker-dealer and the claims of his former employer concerning a non-compete agreement to which Mr. Mannion was a party. (*See* Br. at n.3.) None of these matters speak to any

propensity by Defendants to engage in misconduct. The SEC identifies no such arbitrations relating to Mr. Reckles.

**e. Defendants Admitted the Conduct at Issue**

The SEC's approach in this litigation has sent a chilling signal to any member of the securities industry who determines that his or her judgment was incorrect or imprudent: cooperation with the government only begets its scorn. In 2006, not long after the implosion of World Health, Defendants acknowledged the imprudence of their judgment, consulted counsel, and promptly undertook remedial measures, disclosing the conduct to the Fund investors and restoring the sales proceeds to the Fund, all well before the SEC investigated or challenged the conduct. Defendants have cooperated with the SEC at every stage in its investigation, including the self-reporting of the very conduct that formed the basis of the sole violation remaining at issue in this case.

In exchange for their cooperation, Defendants have been rewarded with harsh demands for their banishment from the securities industry. Although frustrated with the SEC's conduct, Defendants have never disputed the facts that form the basis of the Section 206(2), as evidenced by this Court's finding that Defendants had conceded the issue of their negligence. (March 25 Order at n.24.) Defendants' voluntary restoration of the proceeds to the Fund unquestionably

demonstrates Defendants' remorse concerning the appropriateness of the warrant transaction, notwithstanding the SEC's continued mudslinging.[30]

**f. Recidivism by Defendants is Unlikely**

The conduct at issue in this case occurred nearly nine years ago, and no similar allegations have been raised since, strongly suggesting that future violations are not likely. Indeed, if the SEC truly thought that Defendants were the menace depicted in its brief, it could have sought preliminary injunctive relief at any point in the last nine years. The conduct at issue certainly does not merit the collateral consequences that Defendants would suffer through the entry of an injunction against them, which would perpetuate an indefinite *de facto* bar, even though the conduct at issue does not merit it.[31]

---

30 The SEC's reliance on *SEC v. Michel*, 521 F.Supp.2d 795 (N.D. Ill. 2007) is misplaced. (Br. at 13.) *Michel* involved a defendant who flatly denied wrongdoing and provided evasive testimony to the court in the face of overwhelming evidence. *Michel*, 521 F.Supp.2d at 830.

31 The imposition of an injunction could cause a statutory disqualification of Defendants pursuant to one or more of the federal securities laws. For example, Rule 506(d) under the Securities Act of 1933 bars issuers associating with "bad actors" from relying the exemptions from registration of securities provided by Regulations D and A. Mr. Mannion is the co-founder and Senior Managing Director of StreetCapital, Inc., a privately-owned investment banking firm assisting in capital raising activities for public and private companies often relying on such exemptions. The imposition of an injunction against Mr. Mannion would subject him, his firm, and the firm's employees to the disqualification provisions of Rule 506(d), and essentially precipitate the end to the business.

### C. The Court's Discretion to Impose Civil Monetary Penalties is Bound by the Facts

Section 209(e) of the Advisers Act sets forth tiered penalties as follows:

> '[F]or each violation' a 'first' tier civil money penalty that 'shall not exceed ... $5,000 for a natural person or $50,000 for any other person.' However, [for] 'fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement,' a court may, 'for each violation,' impose 'second tier' civil money penalties that 'shall not exceed $50,000 for a natural person or $250,000 for any other person."[32]

In determining remedies for violations of Section 206(2), courts have concluded that "where no losses were demonstrated, and [the] Court concludes that Defendants' actions were not intentional or deliberate, second and third tier penalties are inappropriate." *SEC v. Slocum, Gordon & Co.*, 334 F. Supp. 2d 144, 186 (D.R.I. 2004) (imposing a $1,000 civil penalty for each of three separate violations). The Court thus has broad latitude to determine the penalty within the proscribed limits. A defendant's cooperation with law enforcement is an appropriate factor for the Court to consider in determining the civil penalty.[33]

Here, the Court is considering remedies solely on the basis of a single violation of Section 206(2). Defendants did not profit from the violation, they lost

---

[32] *SEC v. Barr Fin. Grp., Inc.*, 98-1806-CIV-T-17E, 1999 WL 1209520 (M.D. Fla. May 5, 1999), *aff'd sub nom. SEC v. Barr Fin.*, 220 F.3d 591 (11th Cir. 2000) (citations omitted).

[33] *SEC v. Inorganic Recycling Corp.*, 99 CIV. 10159 (GEL), 2002 WL 1968341, at *5 (S.D.N.Y. Aug. 23, 2002) ("Taking [his] cooperation into account, the Court concludes that the appropriate civil penalty in [defendant's] case is zero.").

personal funds, they long ago disgorged their sales proceeds to the Fund, and they self-reported their conduct to investors and to the SEC. In discussing Defendants' intent, the Court recognized that "[t]he fact that Defendants personally exercised the warrants does not in itself show that they did so 'for personal benefit.'" (March 25 Order at 39.) The SEC also has abandoned its claims that Defendants' actions were intentional or deliberate, and, as such, has not developed any jury-adjudicated facts for the imposition of a Second or Third Tier Penalty. Even if the Court determined to impose a civil monetary penalty, at most, it should be a First Tier Civil Penalty not to exceed $5,000 for each of the individual Defendants.

## IV. CONCLUSION

For the reasons stated herein, Defendants pray that the Court deny the SEC's Motion for Remedies, or in the alternative, apply a First Tier civil penalty in an amount no greater than $5,000.

Respectfully submitted,

By: /s/ Ross A. Albert
Ross A. Albert, Esq.
Ga. Bar No. 007749
Morris, Manning, and Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326
O: 404.504.7700
F: 404.365.9532
ralbert@mmmlaw.com

By: /s/ Stavroula E. Lambrakopoulos
Stavroula E. Lambrakopoulos, Esq.
Stephen J. Crimmins, Esq.
Erin Ardale Koeppel, Esq.
Richard James Mitchell, Esq.
Matthew B. Bowman, Esq.
K&L Gates LLP
1601 K Street, N.W.
Washington, D.C. 20006-1600
O: 202.778.9248
F: 202.778.9100
stavroula.lambrakopoulos@klgates.com

*Attorneys for Defendants*

Dated: June 9, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2014, I electronically filed the foregoing Response in Opposition using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

David Williams, Counsel to the Plaintiff
M. Graham Loomis, Counsel to the Plaintiff
Adam Aderton, Counsel to Plaintiff

I also certify under LR 7.1D that this brief has been prepared with 14-point Times New Roman font, as approved by the Court in LR 5.1B

s/ *Richard James Mitchell, Esq.*
*Pro Hac Vice*
K&L Gates LLP
1601 K Street, N.W.
Washington, D.C. 20006-1600
O: 202.778.9248
F: 202.778.9100

*Attorney for Defendants*