**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION**, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No.: 1:10-cv-03374-WSD |
| **PAUL T. MANNION, JR.**, **et al.,** | : | |
| Defendants. | : | |

**REPLY IN FURTHER SUPPORT OF**
**PLAINTIFF'S MOTION FOR IMPOSITION OF REMEDIES**

Plaintiff the United States Securities and Exchange Commission ("SEC" or "Commission") submits this Reply in further support of its Motion For Imposition of Remedies against the Defendants Paul Mannion, Andrew Reckles, PEF Advisors Ltd., and PEF Advisors, LLC (collectively, "Defendants").

## PRELIMINARY STATEMENT

The misconduct proven by the Commission is as straightforward as it is unsettling. Defendants Paul Mannion and Andrew Reckles, investment advisers who owed their client the Palisades Master Fund, L.P. (the "Fund") the highest fiduciary duty, stole from the Fund. And the Commission has put forward

substantial record evidence establishing that the Defendants lied to the Fund's investors about the value of the Fund's assets – the most fundamental information regarding an investment.

The facts giving rise to the misconduct here are at once antithetical to a "high standard of business ethics in the securities industry," *SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 186 (1963), and beyond meaningful dispute. Defendants offer little or no factual or legal basis to deny the relief sought. The Commission's Motion should be granted in its entirety.

## <u>ARGUMENT</u>

### A. The Court May Properly Assess All of the Defendants' Misconduct

The determination of the necessity and scope of injunctive relief is not limited to consideration of the conduct that gives rise to the proven violation. "[A] full exploration of facts is usually necessary in order (for the District Court) properly to draw [a] decree so as to prevent future violations and eradicate existing evils." *U.S. v. Ward Baking Co*., 376 U.S. 327, 330-31 (1964). The determination of appropriate injunctive relief "is not limited to prohibition of the proven means by which the evil was accomplished, but may range broadly through practices connected with acts actually found to be illegal. Acts entirely proper when viewed alone may be prohibited." *Id*. at 331.

Defendants contend that it would be unfair for the Court to consider the entire range of their misconduct in fashioning injunctive relief. Opp. at 6-10. They argue that "[o]nly one violation remains at issue," and that "[t]he SEC may not surreptitiously resurrect claims." *Id*. But while the Defendants would certainly prefer that the Court ignore their larger course of misconduct, which encompasses the theft of Fund warrants, they cite no legal basis – or even any good reason – for doing so.

As the Commission set forth in its Motion, the determination of the necessity for injunctive relief requires that the Court evaluate, among other things, "the isolated or recurrent nature of the infraction. . . ." *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982).[1] In making this assessment, "[t]he court

---

[1] The Court's ultimate inquiry on injunctive relief is whether there exists a reasonable likelihood of future violations. *Carriba Air, Inc.*, 681 F.2d at 1322. In interpreting injunctive relief provisions of the Securities Exchange Act of 1934 ("Exchange Act") and Securities Act of 1933 ("Securities Act"), which provide for injunctive relief where a person "is engaged" or is "about to engage" in violative conduct, *see* Exchange Act Section 21(d)(1) [15 U.S.C. § 78u(d)(1)] and Securities Act Section 20(b) [15 U.S.C. § 77t(b)], the Eleventh Circuit has held that the Commission has the burden of presenting "positive proof" of a likelihood of future violations. *E.g., SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 733 (11th Cir. 2005). However, under the Investment Advisers Act of 1940 ("Advisers Act"), which governs investment advisers who owe clients a fiduciary duty, injunctive relief is appropriate upon a showing that a person previously "has engaged" in conduct that violates the Act. *See* Advisers Act Section 209(d) [15 U.S.C. § 80b-9(d)]. In interpreting statutory provisions which permit injunctive relief upon a showing that a violator "has engaged" in violative conduct, the Eleventh Circuit has explained that

may also consider past misconduct in addition to convictions and pleas in determining whether there is a pattern." *SEC v. Teo*, No. 04-cv-1815, 2011 WL 4074085, at *8 (D.N.J. Sept. 12, 2011), *aff'd,* 746 F.3d 90 (3rd Cir. 2014). *Accord, e.g., CFTC v. Rosenberg*, 85 F.Supp.2d 424, 436-37, n. 15 (D.N.J.2000) (on the question of whether injunctive relief was warranted, permitting the testimony of two witnesses who claimed that the defendant had defrauded them even though the complaint related to another of the defendant's clients on the question of whether injunctive relief was warranted); *SEC v. Everest Management Corp*., 466 F. Supp. 167, 175-76 (S.D.N.Y. 1976) (considering prior criminal misconduct to support the conclusion that violations at issue were part of a "series of patently fraudulent transactions" and imposing injunctive relief). The theft of Fund warrants that give rise to the violation occurred in the context of an ongoing scheme by Mannion and Reckles to enrich themselves at the expense of the Fund. Their ongoing and recurrent misconduct is probative of the necessity of injunctive relief.

Defendants acknowledge that the Court may consider "evidence relevant to the Court's determination of [a] particularized remedy," but complain that the Commission seeks to prove "never-before adjudicated allegations" at the

---

such relief should "normally" be imposed upon proof of a violation, and the burden rests upon the violator "to prove that the violation is not likely to recur." *E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc*., 117 F.3d 1244, 1253-54 (11th Cir. 1997).

evidentiary hearing on remedies. Opp. at 8. They do not explain the purpose of an evidentiary hearing *other* than to resolve "never-before adjudicated" factual issues. And Defendants demonstrate that the "never-before adjudicated" facts are not in material dispute. Defendants *admit*, for instance, secretly enriching themselves in transactions where they were supposed to be representing the Fund. While "procuring forbearance agreements and other concessions from [their] investors," Defendants concede that World Health – the beneficiary of these investor concessions – was compensating them. *Id*. at 9.

It is black-letter law that "[a]n agent has a duty not to acquire a material benefit from a third party in connection with transactions conducted . . . on behalf of the principal." Restatement (Third) Agency, §8.02; *In the Matter of O'Brien Partners, Inc*., Rel. No. 33-7594, 1998 WL 744085 at * 8 (Oct. 27, 1998) (investment adviser "breached its fiduciary duty to [clients] by failing to adequately disclose that , while providing advisory services" to clients, investment adviser "also was receiving payments from third parties that brokered agreements"). Defendants contend that they "fully disclosed" that they "may receive compensation and make personal investment decisions conflicting with the decisions of the Fund." Opp. at 9. Defendants' disclosures certainly evidence their subjective awareness of the conflict of interest inherent in their misconduct.

But it was not true that, as disclosed, Defendants *may* receive compensation – in fact they *did* receive compensation from World Health. They received millions of dollars in compensation from World Health that was never disclosed and never consented to by investors of the Fund. The Eleventh Circuit has explained that "[t]o warn that the untoward may occur when the event is contingent is prudent, to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit." *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 769 (11th Cir. 2007). Defendants' course of conduct was deceitful; it is substantially undisputed; and it is probative of the necessity for injunctive relief.

The Commission is entitled to prove facts relevant to the Court's equitable determinations on remedies, even if those facts overlap with the allegations of various other claims no longer in the case. Defendants complain that through this evidence the Commission is trying to "surreptitiously resurrect" its former claims. Opp. at 9-10. They argue that "the undisputed facts demonstrated that the SEC was not entitled to pursue" certain claims. *Id*. But the Court's narrowing of certain of the Commission's claims had little to do with the weight of the evidence. For instance, the Commission alleged that the Defendants lied to investors over a three-month period about the value of the Fund's investments in World Health. The Commission has already proffered substantial proof of Defendants' inflation

of Fund assets, including Defendant's undisclosed internal analysis demonstrating that a reported $15.3 million value of the World Health assets was overstated by as much as $5.9 million dollars in monthly reports [DE 59-2, Ex. 38]; an internal analysis by the Fund's administrator that showed that the assets were worth less than half their reported value [DE 59-2, Ex. 10]; internal communications between the two Defendants reflecting that at the same time they were valuing the assets at over $15.3 million, Defendants subjectively believed that they "need to 0 this investment now." [DE 774].

This proof is substantially uncontroverted. Limitations on certain of the Commission's claims had nothing to do with the strength of the evidence.[2] And the evidence demonstrates that Defendants purposefully deceived the investors of the Fund about the value of its assets – conduct that should inform this Court's consideration of the necessity of injunctive relief. Taking this misconduct into

[2] The Court held that misrepresentations to existing Fund investors as to the value of Fund assets did not satisfy the "in connection with" requirement of Section 10(b) of the Exchange Act, and did not amount to a fraud "upon a client" within the meaning of Section 206 of the Advisers Act absent precise proof of the impact of the misrepresentations on adviser fees paid by the Fund itself. *SEC v. Mannion*, No. 10-cv-3374, 2013 WL 1291621, at *11-12 (N.D. Ga. March 25, 2013). Notwithstanding these legal conclusions, the Court recognized that "[t]he record shows that three assets in the Side Pocket were overvalued, thus causing the Side Pocket to be overvalued in each of the disputed NAVs: the World Health restricted stock (in the August NAV only), the convertible debentures (in each NAV), and the bridge loans (in each NAV)." *Id*. at *12. Defendants offer no reason to ignore this significant record evidence.

account does not deprive Defendants of a right to trial by jury. Defendants' liability for violation of the Advisers Act has been established by this Court's grant of summary judgment. "[I]t is well-settled that the grant of summary judgment does not deprive a party of his Seventh Amendment right to a jury trial." *Jackson v. Hartford Life and Acc. Ins. Co.*, 543 Fex.Appx. 977, 979 (11th Cir. Nov. 7, 2013). And Defendants "have no right to a jury trial with respect to whether to impose the relief the SEC has requested." *SEC v. Elliott*, No. 09-cv-7594, 2011 WL 3586454, at *15 (S.D.N.Y. Aug. 11, 2011) *citing Tull v. United States*, 481 U.S. 412, 427 (1987) ("We therefore hold that a determination of a civil penalty is not an essential function of a jury trial, and that the Seventh Amendment does not require a jury trial for that purpose in a civil action.") *and SEC v. Tome*, 833 F.2d 1086, 1096 n. 7 (2d Cir.1987) ("[T]he Seventh Amendment right to a jury trial does not apply to the equitable actions for disgorgement.") *and SEC v. Commonwealth Chem. Secs., Inc.,* 574 F.2d 90, 95 (2d Cir.1978) (same re: action for disgorgement and injunction).

**B. The Court Should Order Full Disgorgement**

The Commission is "entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). The Commission has demonstrated that the ill-gotten gains

from Defendants' misappropriation of Fund warrants is $1,723,256, or $861,628 per individual Defendant. And while these ill-gotten gains may be fairly characterized as "paper profits," Defendants' characterization of these profits as "speculative" or "hypothetical" is simply incorrect. *See SEC v. Shapiro*, 494 F.2d 1301, 1309 (2d Cir.1973) (ordering disgorgement of paper profits even though defendant held stock through subsequent decline in stock price). Defendants not only misappropriated the warrants – they also exercised the warrants, and as a result actually received stock worth $1.7 million more than they paid for it.[3]

Defendants do not meaningfully contest the calculation of disgorgement. Rather, they rely on a subsequent diminution of the market value of the stock to justify their claim that they lost money. But in its Motion, the Commission cited a lengthy list of authorities standing for the proposition that losses sustained as a result of post-fraud market declines are *irrelevant* to the question of disgorgement. Defendants' response to these authorities is to ignore them.

---

[3] In this respect, Defendants' argument that the Commission did not offer expert testimony or analysis as to the value of the warrants is misplaced. Before exercise, the value of a warrant may be uncertain due to unknown variables that may affect its value, such as whether the warrant will be exercised at all, or the price of the relevant stock at the time of any potential future exercise. But at the time of exercise – which in this case coincided with the misappropriation – there are no unknown variables. The exercise price of the stock and its market value are known, and the value of a warrant is "apparent." *See Centel Communications Co. v. CIR*, 920 F.2d 1335, 1338 (7th Cir. 1990).

But these authorities persuasively hold that subsequent market events are not causally related to the fraud. After all, if a thief steals a car with a $100,000 price tag, his illicit gain from his theft is $100,000. It is irrelevant to that determination whether on the day after the theft he is unable to find a willing buyer; or that on the second day he does not drive the car; or that on the third day he crashes the car into a tree. In each case, his "illicit gain" is the same – $100,000. So too here, as "[w]hen a fraudulent buyer has reached the point of his full gain from the fraud, . . . any consequence of a subsequent decision, be it to sell or to retain the stock, is *res inter alios*, not causally related to the fraud." *SEC v. MacDonald*, 699 F.2d 47, 54 (1st Cir. 1983) (holding defendant's post-fraud profits from stock run-up after fraud not subject to disgorgement). *Accord, e.g., SEC v. Seghers*, 298 Fed.Appx. 319, 2008 WL 4726248, *14 (5th Cir. Oct. 28, 2008) (noting that "profits . . . obtained by wrongdoing are ill-gotten gains whether [defendant] retained them or lost them in [the scheme] or another investment"); *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1192, n. 6 (9th Cir. 1998) ("the fact that [the] scheme ultimately failed and [defendant] lost $1,000,000 of his own funds [does not] release him from his obligations to the defrauded investors."). Defendants' gain from their fraud is $1.7 million – their subsequent investment losses are irrelevant.

**C. Defendants Should Be Enjoined**

Defendants should be permanently enjoined. Defendants' arguments to the contrary ignore the facts of their conduct and the law governing the imposition of injunctive relief. They first claim that the Commission is seeking an "obey the law" injunction. This is false. The proposed language enjoins the Defendants from violating Section 206(2) of the Advisers Act by engaging in specific conduct – it proscribes stealing client assets or lying about stealing client assets.[4] The "restrained party has fair notice of what conduct will risk contempt." *SEC v. Goble*, 682 F.3d 934, 951 (11th Cir. 2012).

Defendants also claim that "[a]n injunction is unprecedented in a non-scienter case." This is similarly false. Such injunctions are routine. *E.g., SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 333 (6th Cir. 2013) (affirming imposition of injunctive relief for violations of Section 5 of Securities Act, which does not require proof of scienter); *Calvo*, 378 F. 3d at 1216 (same); *SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980) (same); *SEC v. Moran,* 944 F. Supp. 286,

---

[4] The injunctive language proposed by the Commission reflects its effort to craft a narrowly tailored injunction that adequately puts Defendants on notice of prohibited conduct. The Commission is nevertheless amenable to additional language that would provide additional specificity if the Court believes it appropriate.

294 (S.D.N.Y. 1996) (imposing injunctive relief for negligent violations of Section 206(2)).

Defendants' conduct was egregious; their violations were not isolated; they acted with a high degree of scienter;[5] they offer no meaningful assurance against future violations; and their occupations present opportunities for future violations.[6] Injunctive relief is called for. Defendants' arguments to the contrary are without merit.

While Defendants argue that they "acted in good faith," Opp. at 19, their explanation of their good faith strains credibility. They claim that they "did not deem it prudent" at the time of exercise "to increase the Fund's investment" due to the concentration of World Health securities in the Fund's portfolio. *Id*. But, of course, just days *after* exercising the warrants they caused the Fund to *buy* 500,000

---

5 Defendants contend that the Commission "side stepped" its jury demand in an attempt to "try the question of scienter in the context of the remedies phase," characterizing the Commission's stated resource-saving rationale as "disingenuous." Opp. at 10, 20. But of course, the claims abandoned by the Commission, if established, would merit remedies substantially identical to those now available upon the Court's summary judgment finding of an Advisers Act Section 206(2) violation. Thus, any trial – irrespective of its outcome – would find the litigation in the same posture as it is now, moving forward toward a hearing on remedies. As set forth above, the evidence in this case is largely undisputed. These facts barely merit a single hearing; they do not merit two.

6 The regulatory history of each Defendant suggests that the possibility of future misconduct is far from speculative.

shares of World Health stock at market prices higher than the exercise price of the warrants. And just days after that, Mannion and Reckles caused the Fund to advance World Health millions of dollars in unsecured "loans," which were never repaid. They did not take the warrants to protect the Fund – they took the warrants to line their pockets.

Defendants' contention that they have "admitted the conduct" and "cooperated" is equally without merit. Opp. at 21-22. While Defendants claim to have "self-reported" their misconduct, the purported "self-reporting" occurred only after being subpoenaed to testify before the SEC and being confronted with documentary evidence. And while Defendants claim to have taken "remedial measures" by restoring sales proceeds to the Fund – after being subpoenaed by the Commission – throughout the course of this litigation Defendants have failed to supply any evidence of such "remediation." And, of course, Defendants have maintained at just about every turn in this litigation that they have done nothing wrong.

Defendants contend that additional misconduct is unlikely in the future because their fraud took place years ago and "no similar allegations have been raised since." Opp. at 23. But during most of the time since the misconduct, Defendants have been under careful scrutiny as a result of this SEC investigation

and enforcement action. "It is not sufficient to argue that the [defendant] would be foolhardy to violate the securities laws in the midst of an SEC enforcement proceeding. As the cases make clear, the inquiry goes to predilection rather than immediate probability, and a court should not be obligated to assess, or even to take into account, the SEC's degree of vigilance in policing particular individuals before an injunction may issue." *SEC v. Musella*, 578 F.Supp. 425, 444-445 (S.D.N.Y. 1984), *citing SEC v. Dimensional Entertainment*, 518 F.Supp. 773, 775 (S.D.N.Y.1981) (injunction entered even though defendant would not be released from prison for at least a year). Permanent injunctive relief is warranted as to both Defendants.[7]

**D. Conclusion**

The Court should impose permanent injunctive relief, disgorgement, prejudgment interest, and a civil monetary penalty against each Defendant.

Respectfully submitted this the 24th day of June, 2014.

By: /s/ *M. Graham Loomis*
M. Graham Loomis
Ga. Bar No. 457868
U.S. Securities and Exchange Commission
950 East Paces Ferry Road, Suite 900

[7] For the same reasons that Defendants argue that permanent injunctive relief is not warranted, they also contend that only a nominal penalty should be imposed. However, for the reasons set forth above, both injunctive relief and a substantial monetary penalty are warranted.

Atlanta, Georgia 30326
Email: LoomisM@sec.gov
Phone: (404) 842-7627
Fax: (404) 842-7633

*<u>/s/ David Williams</u>*

David Williams (*pro hac vice*)
Adam S. Aderton (*pro hac vice*)
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4010
Email: WilliamsDav@sec.gov
Phone: (202) 551-4548 (Williams)
Fax: (202) 772-9246 (Williams)

*Attorneys for Plaintiff Securities and Exchange Commission*

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that on June 24, 2014, I electronically filed the attached document with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Ross A. Albert
Morris, Manning & Martin, LLP
990 Hammond Drive
Suite 300
Atlanta, GA 30328, USA

Stavroula E. Lambrakopoulos
Richard James Mitchell
Matthew B. Bowman
K & L Gates-DC
1601 K Street, NW
Washington, DC 20006

I also certify under LR 7.1 D, NDGa that this motion has been prepared with 14-point Times New Roman font, as required by LR 5.1C, NDGa.

*/s/ David Williams*
David Williams (*pro hac vice*)
U.S. Securities and Exchange Commission