IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff,<br><br>    v.<br><br>PAUL T. MANNION, JR. et al.,<br><br>            Defendants. | 1:10-cv-3374-WSD |

**OPINION AND ORDER**

This matter is before the Court on the Commission's Motion to Dismiss [138] and the Commission's Motion for Imposition of Remedies [144].

**I.     BACKGROUND**

This is a civil enforcement action brought by the Securities and Exchange Commission ("SEC" or the "Commission") under the Securities Exchange Act of 1934 ("Exchange Act") and the Investment Advisers Act of 1940 ("Advisers Act"). On October 19, 2010, the Commission filed its Complaint [1] against Defendants Paul T. Mannion, Jr. ("Mannion"), Andrew S. Reckles ("Reckles"), PEF Advisors Ltd. ("PEF Ltd.") and PEF Advisors LLC ("PEF LLC") (collectively, "Defendants"). The Complaint names Palisades Master Fund, L.P. (the "Palisades Fund" or the "Fund") as Relief Defendant. PEF Ltd. and PEF LLC

are alleged to be the investment advisors to Palisades Equity Holdings Ltd. and Palisades Equity Fund, L.P., hedge funds that served as feeder funds for, and otherwise made investments through, the Palisades Fund.  Mannion and Reckles are alleged to be the principals and co-owners of PEF Ltd. and PEF LLC.

A.   Commission's Claims and Relevant Procedural Background

In its Complaint, the Commission alleged various fraudulent schemes by Defendants, including that (i) in August, September, and October 2005, Defendants reported monthly "net asset values" ("NAVs") with inflated values of certain assets held by the Palisades Fund (the "Valuation Claim"), and (ii) in July and August 2005, Defendants personally exercised stock warrants, for shares of World Health Alternatives, Inc. ("World Health"), belonging to the Fund (the "Misappropriation Claim").[1]  In Count I of the Complaint, the Commission alleged that Defendants' actions in connection with these alleged schemes constitute violations of Section 10(b) of the Exchange Act.  In Count II, the Commission alleged that Defendants' actions constitute violations of subsection (1) of Section 206 of the Advisers Act.  In Count III, the Commission alleged that Defendants'

---

[1] The Complaint also alleged, in connection with the Misappropriation Claim, that Defendants misappropriated certain other assets belonging to the Fund, and the Complaint alleged a separate scheme involving the short sale of certain securities. These claims have been dismissed from this action, and they are not presently at issue.

actions constitute violations of subsection (2) of Section 206 of the Advisers Act.

On June 28, 2012, and July 30, 2012, the Commission and Defendants filed cross Motions for Summary Judgment [59, 66]. On March 25, 2013, the Court entered its Order [87] on the motions (the "Summary Judgment Order"). With respect to the Valuation Claim, the Court found that the record lacked evidence of the amount of the alleged overvaluations stated in the September and October 2005 NAVs. On this basis, the Court concluded that the trier of fact could not determine the amount by which the overvaluations inflated Defendants' management fees and could not, therefore, determine whether the overvaluations were "material" under Section 206. The Court thus granted Defendants summary judgment on the Valuation Claim asserted under Section 206 based on the September and October 2005 NAVs. The Court further found that, with respect to the August 2005 NAV, the record contained sufficient evidence of "materiality" to allow the Section 206 claims based on the August 2005 NAV to proceed to trial.[2]

With respect to the Misappropriation Claim, the Court found that the record established Defendants' liability under Section 206(2), and the Court granted the Commission summary judgment on its Section 206(2) Misappropriation Claim.

---

[2] The Court granted Defendants summary judgment on all components of the Valuation Claim asserted under Section 10(b).

The Court found that the record showed a genuine dispute as to whether Defendants acted with scienter under Sections 10(b) and 206(1).  The Court thus denied summary judgment to both the Commission and Defendants on the Misappropriation Claim asserted under Sections 10(b) and 206(1).

On April 22, 2013, the Commission filed its Motion for Reconsideration [89] of the Court's Summary Judgment Order.  With respect to the Misappropriation Claim, the Commission argued, as it did in its Motion for Summary Judgment, that the record establishes as a matter of law that Defendants acted with scienter in exercising the Palisades Fund's warrants.  In its Order on the Motion for Reconsideration [136] (the "Reconsideration Order"), the Court again found that the facts supporting scienter are in dispute and are required to be decided by the finder of fact at trial.

Following the Court's Reconsideration Order, the following claims remained to be tried in this matter: (i) that Defendants violated Section 206 of the Advisers Act by overvaluing the August 2005 NAV (the "Section 206 Valuation Claim"); (ii) that Defendants violated Section 10(b) of the Exchange Act by misappropriating the Fund's World Health warrants (the "Section 10(b) Misappropriation Claim"); and (iii) that Defendants violated Section 206(1) of the

Advisers Act by misappropriating the Fund's World Health warrants (the "Section 206(1) Misappropriation Claim").

    B.    <u>Pending Motions</u>

On March 12, 2014, the Commission filed its Motion to Dismiss seeking to voluntarily dismiss with prejudice, under Rule 41(a) of the Federal Rules of Civil Procedure, all of its claims remaining to be tried, including the Section 206 Valuation Claim, the Section 10(b) Misappropriation Claim, and the Section 206(1) Misappropriation Claim.  Defendants consented to the Motion to Dismiss.

On May 19, 2014, the Commission filed its Motion for Imposition of Remedies related to its Section 206(2) Misappropriation Claim, on which the Court previously granted summary judgment in the Commission's favor.  The Commission seeks disgorgement of Defendants' gains from their exercise of the Palisades Fund's World Health warrants, a permanent injunction prohibiting Defendants from violating the Advisers Act, and a civil penalty.

**II.**    **DISCUSSION**

    A.    <u>Motion to Dismiss</u>

In its Motion to Dismiss, the Commission seeks, under Rule 41(a) of the Federal Rules of Civil Procedure, the voluntary dismissal with prejudice of its Section 206 Valuation Claim, Section 10(b) Misappropriation Claim, and Section

206(1) Misappropriation Claim.  Courts uniformly have held that Rule 41(a) does not permit the dismissal of individual claims from a multi-claim action but only authorizes the dismissal of an entire action.  See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362, at 413–14 & n.13 (3d ed. 2008 & Supp. 2012) (collecting cases) ("Rule 41(a) is applicable only to the voluntary dismissal of all the claims in an action."); see also Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1106 (11th Cir. 2004) (holding that a district court is "not empowered to dismiss only certain claims under Rule 41"); Exxon Corp. v. Md. Cas. Co., 599 F.2d 659, 662 (5th Cir. 1979)[3] (holding that Rule 41(a) allows the dismissal of an "action," not "the separate claims which make up an action").  As many authorities have explained, the proper way for a plaintiff to remove a single claim is to move to amend the complaint under Rule 15.  See, e.g., 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2362, at 413–14 (3d ed. 2008).

    The Court cannot grant a voluntary dismissal, under Rule 41(a), of the claims the Commission seeks to dismiss because those claims do not constitute the Commission's entire action.  See Fed. R. Civ. P. 41(a)(1)(A); Klay, 376 F.3d at

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Former Fifth Circuit issued before the close of business on September 30, 1981.

1106. The Court, however, construes the Motion to Dismiss as an unopposed motion, under Rule 15, to amend Plaintiffs' Complaint to remove the Section 206 Valuation Claim, the Section 10(b) Misappropriation Claim, and the Section 206(1) Misappropriation Claim. See, e.g., Anderberg v. Masonite Corp., 176 F.R.D. 682, 686 (N.D. Ga. 1997) ("When a party seeks to dismiss a single claim in a multi-count complaint instead of an entire action, . . . the motion should be treated as a motion to amend the complaint under Rule 15(a) to delete the specific claim."). Because the parties consent to the removal of these claims, the Court grants the motion to dismiss under Rule 15(a). See Fed. R. Civ. P. 15(a)(2) (providing that "a party may amend its pleading . . . with the opposing party's written consent").

     B.    Motion for Imposition of Remedies

District courts possess general equitable powers to remedy violations of the securities laws. See, e.g., SEC v. Tex. Gulf Sulphur Co., 446 F.2d 1301, 1307 (2d Cir. 1971). "Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy." SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1103 (2d Cir. 1972); see also Sargent v. Genesco, Inc., 458 F.2d 9, 10 (5th Cir. 1972) (recognizing that "the District Court's broad equity

power will be capable of fashioning an adequate remedy for any violation of the securities laws"). In this case the Commission seeks three forms of equitable relief for Defendants' violation of the Section 206(1) of the Advisers Act: (i) disgorgement of Defendants' gains; (ii) a permanent injunction; and (iii) a civil penalty.

### 1. *Disgorgement*

A defendant who violates the securities laws, including the Advisers Act, is generally liable for disgorgement of "ill-gotten gains." See, e.g., SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004); see also SEC v. Lauer, 478 F. App'x 550, 557 (11th Cir. 2012). "The remedy of disgorgement is designed both to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws. 'The purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his ill-gotten gain.'" SEC v. Phoenix Telecom, L.L.C., 231 F. Supp. 2d 1223, 1225 (N.D. Ga. 2001) (citation omitted) (quoting SEC v. Blatt, 583 F.2d 1325, 1335 (5th Cir. 1978)).

"The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." Calvo, 378 F.3d at 1217 (citing SEC v. Warde, 151 F.3d 42, 50 (2d Cir. 1998); SEC v. First Pac. Bancorp., 142 F.3d 1186, 1192 n.6 (9th Cir. 1998); SEC v. First City Fin. Corp., 890 F.2d 1215,

1231–32 (D.C. Cir. 1989)). "The burden then shifts to the defendant to demonstrate that the SEC's estimate is not a reasonable approximation." Id. (citing First City, 890 F.2d at 1232). "Exactitude is not a requirement; '[s]o long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty.'" Id. (quoting Warde, 151 F.3d at 50).

In this case, the Court found that Defendants violated Section 206(2) of the Advisers Act when they personally exercised the World Health warrants belonging to their client, the Palisades Fund. Using the Palisades Fund's warrants, Defendants purchased, for $1.90 per share, 1,044,396 shares of World Health stock. The market price of World Health stock at the time of the transaction was $3.55 per share. Defendants thus purchased, for $1,984,352.40, stock with a market value of $3,707,605.80. The Commission argues that Defendants' ill-gotten gain in exercising their client's warrants is the difference between the purchase and market prices of the stock, which is $1,723,253.40.

Defendants assert that the Commission's calculation is not appropriate because Defendants did not sell their World Health stock for $3.55 per share and never realized the gains asserted. Defendants contend that World Health's share price dropped precipitously following Defendants' exercise of the warrants, and

Defendants ultimately lost over $1.6 million from the transaction. Defendants thus argue that they do not have any ill-gotten gains to disgorge.

Although the Eleventh Circuit has not directly considered the effect of a post-transaction decline in value, on the determination of a disgorgement amount, every circuit that has addressed the issue has held that disgorgement is properly based on a defendant's unrealized "paper" profits at the time of the illegal transaction. See, e.g., SEC v. Seghers, 298 F. App'x 319, 336–37 (5th Cir. 2008) (reversing the district court's refusal to order disgorgement because the defendant's profits were "not diminished by how he chose to continue to invest these ill-gotten profits"); SEC v. First Pac. Bancorp, 142 F.3d 1186, 1192 n.6 (9th Cir. 1998) (holding that disgorgement is proper even if the defendant ultimately loses money); SEC v. Shapiro, 494 F.2d 1301, 1309 (2d Cir. 1974) (holding that disgorgement was properly based on "paper" profits even though defendant made the "unwise investment decision to keep the stock," which ultimately declined value). The Court finds the reasoning in these cases sound and expects the Eleventh Circuit would adopt the same analytical approach. Defendants benefitted from ill-gotten gains when they exercised their client's warrants. Defendants' decision to retain the World Health shares through the stock's substantial decline is not relevant to determining the amount of the original gains. Cf. SEC v.

Aerokinetic Energy Corp., 444 F. App'x 382, 385 (11th Cir. 2011) ("The cases overwhelmingly hold that how a defendant chooses to spend his ill-gotten gains, whether it be for business expenses, personal use, or otherwise, is immaterial to disgorgement." (internal quotation and alteration omitted)).

Defendants next argue that the Commission's valuation method—subtracting the warrant purchase price of the World Health shares from the market price of the shares—is not proper. Defendants assert that they liable for misappropriating warrants—the right to buy stock at a determined price. Defendants argue that expert testimony is required to assign a value to this warrant right. Defendants' argument ignores the fact that Defendants did not simply take the warrants, but they *exercised* them. In this case, the value of the warrants is not theoretical, or based on the possibility of future exercise. Expert testimony is not necessary. Cf. Centel Commc'ns Co. v. Comm'r, 920 F.2d 1335, 1338 (7th Cir. 1990) (holding that, for tax purposes, the value of warrants becomes known upon their exercise). The Court finds that the ill-gotten gains in this case can be reasonably approximated based on the difference between the purchase and market prices of the World Health shares that were the subject of the warrants.

Defendants next argue that the amount of the disgorgement should be reduced by: (i) 22%, because Defendants themselves owned 22% of the Palisades

11

Fund, and (ii) the amount they already refunded to the Palisades Fund after selling the World Health shares at issue.  The Commission did not dispute, or otherwise respond to, Defendants' argument that they are entitled to a 22% reduction, and the Court finds that a 22% reduction in the total amount disgorgement is appropriate.

Although the Commission does not dispute that Defendants would be entitled to a reduction based on any refunds paid, the Commission disputes that Defendants actually re-paid to the Fund any proceeds from the sale of Defendants' World Health shares.[4]  Whether a repayment was made is a factual dispute.  The Court will determine, based upon the evidence submitted at the hearing in this case, the amount, if any, of proceeds previously re-paid by Defendants to the Palisades Fund.

The final amount of disgorgement will equal 78% of the amount remaining after the determined re-paid amount is subtracted from $1,723,253.40.[5, 6]

---

[4] Defendants assert that the Commission previously stipulated that they re-paid $325,000 to the Palisades Fund.  The parties' Proposed Pretrial Order shows that the Commission stipulated only that Defendants sent to the Fund's investors a letter claiming that Defendants re-paid $325,000.  (See Proposed Pretrial Order Attach. E [93-6] ¶ 31.)

[5] The Commission argues that the amount of disgorgement should be imposed on Defendants jointly and severally.  Defendants did not oppose, or otherwise respond to, this argument, and the Court finds that joint and several liability for disgorgement is appropriate.  See Calvo, 378 F.3d at 1215 ("It is a well settled principle that joint and several liability is appropriate in securities laws cases

### 2. *Permanent Injunction*

The Advisers Act provides that a defendant shown to have violated the Act is liable for an injunction against future violations. See 15 U.S.C. § 80b-9(d). The Eleventh Circuit has held that the Commission is entitled to an injunction when it establishes "(1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." SEC v. Unique Fin. Concepts, Inc., 196 F.3d 1195, 1199 n.2 (11th Cir. 1999) (citing SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 806–07 (2d Cir. 1975); SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1100 (2d Cir.1972)). The Court has found that

---

where two or more individuals or entities have close relationships in engaging in illegal conduct.").

[6] The Commission also argues that it is entitled to prejudgment interest on the amount of disgorgement because Defendant otherwise would have benefitted from an "interest-free loan." The Court disagrees. Whether to impose prejudgment interest is in the discretion of the Court. See SEC v. Merchant Capital, LLC, 486 F. App'x 93, 97 (11th Cir. 2012) (citing SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996)). "In deciding whether an award of prejudgment interest is warranted, a court should consider (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." First Jersey, 101 F.3d at 1476 (internal quotation marks omitted). In this case, the Commission does not dispute that Defendants' ill-gotten gains consisted only of "paper" profits, and the Commission has not submitted evidence that Defendants' exercise of the Palisades Fund's warrants deprived the Fund of the actual use of any funds, or that the exercise was otherwise akin to a loan. The Court finds that prejudgment interest is not an appropriate award in this matter.

13

Defendants violated Section 206(2) of the Advisers Act, and the first element for injunctive relief is thus satisfied. The parties dispute whether there is evidence of "a reasonable likelihood that the wrong will be repeated."

In evaluating the likelihood of recurrence, the Court considers several factors, including:

> the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

SEC v. Carriba Air, Inc., 681 F.2d 1318, 1322 (11th Cir. 1982) (quoting Blatt, 583 F.2d at 1334 n.29). Of these factors, only one is undisputed: Defendants continue to work in the investment industry.

Regarding whether Defendants' violation was "isolated or recurrent," the Commission argues that Defendants should be deemed repeat offenders because of other alleged violations, including (i) allegations of violations arising out of the same facts giving rise to this action, including the Valuation Claim, and (ii) prior, unrelated regulatory arbitrations regarding Defendants' conduct. With respect to the Valuation Claim and other alleged violations related to this action, the Court previously held that the record is not sufficient to support these violations. The Commission then voluntarily decided not to pursue the allegations. Defendants

14

have not been found to have to committed the alleged violations, and the Court will not consider them here.[7]  With respect to the alleged prior, unrelated regulatory arbitrations, the parties dispute the relevance of the violations.  The parties did not submit evidence detailing the alleged arbitrations.  The Court thus finds that the parties' dispute is required to be resolved at an evidentiary hearing.

The remaining factors governing injunctive relief also are in dispute.  The "egregiousness" of Defendants' conduct turns largely on whether Defendants acted with scienter.  As the Court discussed fully in its Summary Judgment Order and its Reconsideration Order, scienter is disputed and can be resolved only by a finder of fact.[8]  Whether Defendants have given "sincere" assurances against future

---

[7] The Court notes that to show that these related allegations constitute violations of the securities laws would require the Commission to prove the claims it abandoned, and thus would require one or more "trials within a trial."  Contrary to the Commission's assertion, such a situation is far from efficient.

[8] Defendants argue that the Court should not find scienter because the Commission abandoned its scienter-based claims.  Although scienter is not an element of liability under Section 206(2), it is an independent factor the Court must consider in determining remedies for Section 206(2) violations.  The Commission is thus entitled to attempt to prove Defendants' scienter in connection with their Motion for Imposition of Remedies.  Defendants further argue that the determination of scienter at the remedies stage deprives them of their right to a jury.  Defendants do not have a right to jury in connection with the imposition of equitable remedies, including an injunction.  CBS Broad., Inc. v. EchoStar Commc'ns Corp., 450 F.3d 505, 517–18 n.25 (11th Cir. 2006) ("There is no right to a jury trial . . . when the plaintiffs seek purely equitable relief such as an injunction.").

violations and whether Defendants recognize their wrongful conduct also requires credibility determinations by a finder of fact.

Whether to enter an injunction in this matter depends on the resolution of certain factual disputes: the relevance of prior regulatory arbitrations against Defendants, whether Defendants acted with scienter, whether Defendants have given "sincere" assurances against future violations, and whether Defendants recognize their wrongful conduct. The Court will consider these limited disputes at an evidentiary hearing.[9]

### 3. *Civil Penalty*

The Court may impose penalties for violations of the Advisers Act as follows:

---

[9] Defendants contend that the scope of the Commission's proposed injunction is overly broad. The Court agrees. The Commissions seeks to enjoin not only Defendants but also their "agents, servants, employees, attorneys, and all persons in active concert or participation with them." (SEC's Br. [144-1] at 14.) The Commission does not cite, and the Court is not aware of, any authority authorizing the enjoining of these third-parties. The Commission also seeks to enjoin Defendants from "disseminating false or misleading documents, materials, or information." Defendants have not been found liable of such an offense, and the Commission has not shown that such an injunction is warranted. See 15 U.S.C. § 80b-9(d) (authorizing an injunction to prohibit a defendant from engaging in Advisers Act violations that the defendant "has engaged, is engaged, or is about to be engaged in"). If the Court enters an injunction against Defendants, it will not include these provisions.

    (A) First tier

        The amount of the penalty shall be determined by the court in light of the facts and circumstances.  For each violation, the amount of the penalty shall not exceed the greater of (i) $5,000 for a natural person or $50,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation.

    (B) Second tier

        Notwithstanding subparagraph (A), the amount of penalty for each such violation shall not exceed the greater of (i) $50,000 for a natural person or $250,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if the violation described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

    (C) Third tier

        Notwithstanding subparagraphs (A) and (B), the amount of penalty for each such violation shall not exceed the greater of (i) $100,000 for a natural person or $500,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if—

        (I) the violation described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and

        (II) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

15 U.S.C. § 80b-9(e)(2).

    Defendants concede that they are liable for a "first tier" penalty.  The Commission argues that the Court should impose a "second" or "third tier" penalty.  The imposition of a penalty above the "first tier" requires a showing that

17

Defendants' conduct "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." Id.  In other words, a "second" or "third tier" penalty requires a showing of scienter.  As discussed above, the issue of scienter is required to be decided by a finder of fact at an evidentiary hearing.  The Court will determine the appropriate amount of a civil penalty after the hearing.[10]

### III. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss [138] is **GRANTED**.  The Commission's Section 206 Valuation Claim, Section 10(b) Misappropriation Claim, and Section 206(1) Misappropriation Claim are **DISMISSED** pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Court will conduct, on August 19, 2014, at 9:30 a.m., an evidentiary hearing to resolve factual disputes relevant to each form of relief requested in Plaintiff's Motion for Imposition of Remedies.  Plaintiff's Motion for Imposition of Remedies [144] is **STAYED** pending the

---

[10] As discussed above, Defendants' ill-gotten gains equal at least $1,090,637.65, assuming Defendants re-paid to the Fund the amount asserted in their letter to investors.  The maximum penalty that can be imposed therefore is the same for each tier because Defendants' "gross pecuniary gain," their ill-gotten gains, exceeds each statutory maximum.

August 19, 2014, evidentiary hearing on the following issues: (i) the amount of money, if any, re-paid by Defendants to the Palisades Fund from the proceeds of the World Health stock purchased with the Palisades Fund's warrants; (ii) the nature of prior regulatory arbitrations against Defendants; (iii) whether Defendants' violation of the Advisers Act was committed with scienter; (iv) whether Defendants have given "sincere" assurances against future violations of the Advisers Act; and (v) whether Defendants recognize the wrongful nature of their violation.

    **SO ORDERED** this 1st day of July, 2014.

*[Signature]*
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE